C. C. CATRON et al., Trustees of Methodist Episcopal Church, South, Carthage, Missouri, v. SCARRITT COLLEGIATE INSTITUTE, L. D. RICE, Receiver, and W. J. CATRON et al., Appellants.

In Banc, April 2, 1915.

1. **CONVEYANCE: Vested Estate: Reversion: Condition Subsequent.** Where no condition subsequent was annexed to the grant, and the deed in its entirety and the circumstances attending its execution demonstrate that no reversion was intended upon the subsequent happening of a lawful condition, a deed of gift vesting the title in fee cannot be uprooted, and the fee will not revert to the grantor or his heirs.

2. **CHARITY: Definition.** A charity is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting public buildings or works or otherwise lessening the burdens of government; and it is

immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature. In its legal sense it comprises four principal divisions: Trusts for the relief of poverty; · trusts for the advancement of education; trusts for the advancement of religion; and trusts for other purposes · beneficial to the community, not falling under any of the preceding heads.

3. ————: **Public: Education: Endowment of President's Chair.** A deed "for and in consideration of the love for the cause of Christ and our earnest desire to promote his heritage on earth," to an incorporated church school for students of both sexes, of certain lands and the proceeds thereof, to be applied "for the use and benefit of said institution of learning, especially for the endowment of the president's chair in memory of our deceased son," created a public charity for educational purposes; and the proceeds of the gift were not confined to the exclusive use of supporting the president's chair, but so much as were not necessary for that purpose were left free to be used for other departments or the general support of the school.

4. ————: **Perversion: Varying Educational Gift to Religious Use: Consent.** Courts of equity will vary details of administration of a charity in order to effectuate the permanent purpose of its founder, but they will not alter the charity itself, or substitute another for it. Land and its proceeds were given to Scarritt Collegiate Institute at Neosho, the consideration expressed being "the love we bear for Christ and our earnest desire to promote his heritage on earth," and the fund was to be applied "for the use and benefit of said institution of learning, especially for the endowment of the president's chair in memory of our deceased son." The school at Neosho was abandoned, and merged with another school at Morrisville under the name of "Scarritt-Morrisville College." Both were under the supervision and control of the same ecclesiastical body, and that body directed that the fund be turned over to the trustees of a church in the town in which the grantors resided, to be used in the erection of a memorial church in memory of their deceased son. The only remaining grantor and the heirs of the other consented to such use of the fund and by proper instrument released all claim to the fund, and the trustees of Scarritt-Morrisville College formally consented to said application, and Scarritt Collegiate Institute was dissolved as a corporation, and a receiver appointed. *Held, first,* that there was no forfeiture clause in the grant, and the fund did not revert to the grantors or their heirs on the abandonment of the school at Neosho, and they had no legal power to alter the charity or change the application of the fund; *second,* the charity itself cannot be altered and another substituted therefor, and to permit the fund to be used for the erection of the said memorial church

would, under the circumstances, be to contravene the expressed purposes of the gift, but the fund, being for educational purposes and primarily for the support of the president's chair, must be turned over to Scarritt-Morrisville College, and used for said purposes; and, *third*, the consent of the trustees to its use in the erection of said church, and the direction of the church conference having supervision and control of both schools, were without legal authority, and cannot be held to justify the attempted alteration in the charity.

Appeal from Barton Circuit Court.—*Hon. B. G. Thurman*, Judge.

REVERSED AND REMANDED.

*O. L. Cravens* for appellants.

(1) The whole case turns on the proper construction of the Hall deed conveying the Texas land. State ex rel. v. Adams, 44 Mo. 578; Pomeroy's Equity Jur. (2 Ed.), 1036; Young v. Commissioners, 51 Fed. 593; R. S. 1909, sec. 2870; 4 Ency. Ev. 194; 17 Cyc. 616; Bobb v. Bobb, 89 Mo. 419; Weiss v. Heitkamp, 127 Mo. 23; Henderson v. Henderson, 13 Mo. 151; Sell v. West, 125 Mo. 629; Holocer v. Holocer, 62 Mo. 267; McConnell v. Braymer, 63 Mo. 464; Hickman v. Hickman, 55 Mo. App. 303; 17 Cyc. 670, 646, 619; O'Bryan v. Ash, 169 Mo. 283; Ryder v. Ryder, 244 Ill. 297; Cowherd v. Boyd, 79 S. C. 174; 9 Ency. Ev. 329, 333, 432; Mfg. Co. v. Jaeger, 81 Mo. App. 239. (2) Under the statute the Hall deed passed the fee to the institute. Sec. 2870, R. S. 1909; Gannon v. Allbright, 183 Mo. 238; Yocum v. Siler, 160 Mo. 281; Utter v. Sidman, 170 Mo. 284; Small v. Green, 102 Mo. 104; Ball v. Woolfolk, 175 Mo. 286; Halifax Cong. Soc. v. Stark, 34 Vt. 243; Barre v. Wyoming Hist. Soc., 134 Pa. St. 616; Rines v. Mansfield, 96 Mo. 394; Hunter v. Murphey, 126 Ala. 213. (3) Aside from the statute there can be no reversion to Hall. St. Louis v. Ferry Co., 88 Mo. 615; Garfield Township v. Herman, 66 Kan. 256; Carrol Co. Academy

v. Gallatin Academy, 104 Ky. 621; Fuquays v. Hopkins Academy, 58 S. W. (Ky.) 814; Hand v. St. Louis, 158 Mo. 204; M. E. Church v. Gamble, 26 Ohio Cir. Ct. 295; Heaston v. Commrs., 20 Ind. 398; Higbee v. Rodmann, 129 Ind. 244; Raley v. Umatilla Co., 15 Ore. 172, 3 Am. St. 142; Sohie v. Trinity Church, 109 Mass. 1; Episcopal City Miss. v. Appleton, 117 Mass. 326; Thornton v. Trammell, 39 Ga. 202; Antony v. Stephens, 46 Ga. 241; St. Stephens Church v. Church, 114 N. Y. S. 623; Freer v. Sanitarium, 115 N. Y. S. 734; Haydon v. Railroad, 222 Mo. 126; Thompson v. Hart, 133 Ga. 450; Morrell v. Railroad, 96 Mo. 174; Krueger v. Railroad, 185 Mo. 227; Roberts v. Crume, 173 Mo. 572; Ellis v. Kyger, 90 Mo. 600; Studdard v. Wells, 120 Mo. 25; Messersmith v. Messersmith, 22 Mo. 369; Moore v. Wingate, 53 Mo. 398; O'Bryan v. Wagner, 94 Mo. 94. (4) Absolute title passed to the college direct, for its corporate purposes, without condition subsequent or even a trust. Buchanan v. Kennard, 234 Mo. 142; Brigham v. Hospital, 134 Fed. 513; Church v. Mitchell, 93 Md. 199; Erwin v. Hurd, 13 Abb. N. C. (N. Y.) 91; Bird v. Merklee, 144 N. Y. 544; Hunter v. Murfee, 126 Ala. 213; 6 Cyc. 953; St. James Parish v. Bagley, 138 N. C. 384. (5) The recital in the deed as to the endowment of the president's chair is a mere covenant and not a condition. Krueger v. Railroad, 185 Mo. 227; 14 Am. & Eng. Ency. Law (2 Ed.), 1043; 3 Am. Leading Cases in Equity, 385; 13 Cyc. 684; Stilwell v. Railroad, 39 Mo. App. 221; Investment Co. v. Railroad, 108 Mo. 50; Long v. Moore, 19 Tex. Civ. App. 363; Meyer v. Swift, 73 Tex. 367; Koch v. Streuter, 232 Ill. 594; Druecker v. McLaughlin, 235 Ill. 367. (6) The Hall gift was not a private trust or charity, as contended, because lacking in characteristics of such a use. 2 Pom. Eq. Jur., sec. 987; 1 Perry, Trusts, sec. 384; Doyle v. Whalen, 87 Me. 414; Ireland v. Geraghty, 15 Fed. 35; Field v. Seminary, 41 Fed. 371; Heuser v. Harris, 42 Ill. 425; Morgan v.

Seminary, 70 Ill. App. 575; Webber v. Bryant, 161 Mass. 400; Hathaway v. Sackett, 32 Mich. 97; Bell Co. v. Alexander, 22 Tex. 350.

*McReynolds & Halliburton* for respondents.

(1) The deed in question is specific in its purpose and conveys the real property therein described to a specific trustee, the grantee in said deed, to carry out that purpose. That purpose is charitable in its nature and intended not only for educational purposes but as a memorial as well. By its terms the trustee is directed to carry out the objects of the founders of the trust. The place of executing the trust is named in the deed by the founders. The trustee has ceased to exist. The purpose of the gift has failed. The foundation of the charity remains and is a resulting trust by reason of the failure of the grantee, and by reason of the failure of application as directed by the terms of the said deed to the trustee. It is a universal law that the cardinal principle in the interpretation of a deed or a will founding a charity or trust when a necessity arises calling for an interpretation is to get at the intention and purpose of the party founding the trust or charity and this may be done by the instrument itself or by the aid of oral testimony or by both. Walton v. Drumtra, 152 Mo. 489; Simmons v. Cabanne, 177 Mo. 354; Small v. Field, 102 Mo. 122; Redman v. Barger, 118 Mo. 573; Cross v. Hoch, 149 Mo. 325; Armor v. Frey, 226 Mo. 673; Speed v. Railroad, 163 Mo. 125; Bean v. Kenmuir, 86 Mo. 668; Hurst v. Von De Veld, 158 Mo. 246; Bards v. Brown, 167 Mo. 457; Davidson v. Manson, 146 Mo. 612; Linville v. Greer, 165 Mo. 397; Utter v. Sidman, 170 Mo. 300; McConnell v. Brayner, 63 Mo. 464. (2) The deed in question is specific in its purpose. That purpose is for a memorial, and incidentally educational and religious purposes. It is not a general or public charity for the reason that the

trustee to carry out the objects of the founders is named, and the place of executing the trust or charity is named. The trustee has ceased to exist. The purpose of the gift has failed and as a consequence a resulting trust has been created and it goes to the benefit of the founders of the trust or charity, their heirs or their assigns. McRoberts v. Moody, 19 Mo. App. 32; Woodruff v. Marsh, 38 Am. St. 359; Bullard v. Shirley, 153 Mass. 559; Stratton v. Physio-Medical College, 149 Mass. 505, 14 Am. St. 442, 5 L. R. A. 33; Easterbrooks v. Tillinghast, 5 Gray, 17; Clark v. Taylor, 1 Drew, 642; Corbyn v. French, 4 Ves. 418; Russell v. Kellett, 3 Smale & G. 264; Fisk v. Attorney-General, L. R. 4 Eq. 521; In re Rymer (1895), 1 Ch. 19; Carbery v. Cox, 3 Ir. Ch. 231; Attorney-General v. Bishop of Chester, 1 Bro. C. C. 444; Cherry v. Mott, 1 Mylne & C. 123; Teele v. Bishop of Derry, 60 Am. St. 402. "The purpose for which a trust was created having ceased, the trust itself ceases and the property reverts to the creator of the trust." Salmon v. Sternfield, 102 N. Y. 665; Jenkins v. University, 49 Pac. 250; Hopkins v. Grimshaw, 165 U. S. 342. If a trust for a specific purpose fails by the failure of the purposes, the property reverts to the donor or his heirs; and if the gift is made upon a trust insufficiently or ineffectually declared, as if it is too indefinite, vague and uncertain to be carried into effect, the gift will revert to the seller, his heirs or representatives. McHugh v. McCole, 97 Wis. 166; Heirs v. Murphy, 40 Wis. 276; Mought v. Gelzendonner, 57 Am. Rep. 352; Kelley v. Nichols, 18 R. I. 62, 19 L. R. A. 413; McAuley v. Wilson, 18 Am. Dec. 587; Hadley v. Forsee, 203 Mo. 418.

## STATEMENT.

This suit was brought to the January term, 1910, of the circuit court of Jasper county. The petition alleges that the plaintiffs are the board of trustees of

the Methodist Episcopal Church, South, of Carthage, Missouri; that the defendant Scarritt Collegiate Institute is a corporation of this State, organized as an institution of learning, and subject to the supervision and control of the Southwest Missouri Conference of the Methodist Episcopal Church, South; that the other defendants are the board of curators of Scarritt Collegiate Institute; that on the 19th of September, 1892, W. E. Hall and wife executed warranty deeds conveying sixteen hundred acres of land situated in the State of Texas, to the defendant Scarritt Collegiate Institute, then located at Neosho in Newton county, Missouri.

The petition further alleges that said grantee has sold the land so conveyed to it and realized therefrom the sum of about $13,500, evidenced by money and notes secured by deeds of trust; that the grant of the lands described in said deeds was expressed to be "for the use and benefit of said institution of learning, especially for the endowment of the President's Chair in memory of our deceased son, J. Winston Hall." And that each of said deeds recited "said land or the proceeds thereof is to be applied by said corporation to the object hereinbefore stated."

The petition further alleges that the defendant Scarritt Collegiate Institute has ceased to exist as an institution of learning at the city of Neosho, Missouri, for several years; that all its furniture and appliances have been removed to other institutions of learning, and that the church conference has directed the holders of the legal title to the Collegiate grounds and buildings to sell and dispose thereof, and that said conference has further ordered and directed that the fund arising from the sale of the Texas lands donated to the Scarritt Collegiate Institute should be paid over by the curators of that corporation to the plaintiffs, trustees, to be used in the erection of a memorial church at Carthage, Missouri. That in 1907, W. E. Hall, one of the grantors of the two deeds, died, leaving his wife

and two sons as his only heirs; that these have assigned and transferred to petitioners in writing all of their right, title and interest in and to said fund, on the 20th of September, 1909; that petitioners accepted said assignment and agreed to use the same in the construction of a memorial church in the city of Carthage, Missouri, and have demanded the same from the defendants who have refused and neglected to pay it over to plaintiffs. Wherefore, petitioners pray that the said defendants be required to make a full and complete statement of said fund and a full accounting for the same, and be directed to turn over the money and notes representing it to the plaintiffs. Certain of the defendants, who were curators of the Scarritt Collegiate Institute, filed an answer declining to contest the right of plaintiffs as set forth in their petition, denying that they had possession of the fund in controversy, and asking to be discharged free of costs. The remaining members of the board of curators filed an answer, which so far as material on this appeal, set up in defense to the claims of plaintiffs as set forth in their petition, the following averments in substance: That the Scarritt Collegiate Institute was incorporated in 1888 to conduct an institution of learning for students of both the male and female sex at Neosho, Missouri, under the auspices of the Methodist Episcopal Church, South, and not subject to any particular conference of said church. That the deed conveying the Texas lands to said corporation was an unconditional gift under the warranty of the grantors against claims of all persons; that upon sale of said lands its proceeds were safely invested and amounted on the 27th of December, 1909, to about $13,625.20, specifying the notes making up that sum. That neither the wife nor the two surviving children of the grantors in said deed had any interest in said fund nor could assign the same to plaintiffs. Issue was taken by reply. The cause was transferred by stipulation to the Barton Circuit Court. On the

trial, the plaintiffs introduced in evidence the two deeds conveying the Texas lands, which, though for different tracts, are exactly alike in all other terms and omitting descriptions, are to-wit:

KNOW ALL MEN BY THESE PRESENTS:

That we W. E. Hall and M. E. Hall, his wife, at City of Carthage, County of Jasper and State of Missouri, parties of the first part, *for and in consideration of the love we bear.for the cause of Christ and our earnest desire to promote his heritage on earth* do give and grant and by these presents convey unto the Scarritt Collegiate Institute, a corporation under the laws of the State of Missouri, located at Neosho, Newton .county, Missouri, as party of the second part, for the use *and benefit of said institution of learning especially for the endowment of the President's chair in memory* of our deceased son J. Winston Hall, the following described real estate in the county of Hardeman, State of Texas, . . . in all 1600 acres of land and more or less *which said land or the proceeds thereof is to be applied by said corporation to the object hereinbefore stated and the said corporation is to have and to hold the property aforesaid for the use aforesaid* free from the claim or claims of the grantors herein, their heirs or assigns and free from the claims of all other persons whomsoever.

In witness whereof we have hereunto fixed our seals and subscribed our names this 19th day of September, 1892

W. E. HALL   (Seal)
M. E. HALL   (Seal)
(Italics ours).

Some oral testimony was adduced, over the objections of defendants, as to the purpose of the grantors in said deeds, which, and also the documentary evidence, as far as necessary, will be referred to in the opinion.

The defendant Scarritt Collegiate Institute on January 12, 1909, some years after it had practically ceased to conduct its business at Neosho, entered into articles of association with another institution of learning and the two were combined by decree of the circuit court of Polk county, under the name of "Scarritt-Morrisville College," located at Morrisville, Polk county, Missouri. On April 29, 1909, the board of curators of this

institution, by resolution, requested the board of curators of the Scarritt Collegiate Institute to return the funds in controversy to the Halls to be used to erect a memorial church at Carthage, Missouri, in memory of their deceased son. The church conference also directed the same disposition of the fund. These requests were refused by the contesting curators of the Scarritt Collegiate Institute. Since the institution of this suit, a decree dissolving the Scarritt Collegiate Institute was rendered at the February term, 1911, by the circuit court of Newton county, in a *quo warranto* proceeding brought against it by the prosecuting attorney of that county, wherein a receiver was appointed of its assets, who is in charge of the fund in dispute and was admitted to be a party to this action prior to its appeal to this court.

Upon the consideration of the evidence the learned trial court rendered a decree for plaintiffs as prayed in that petition and a personal judgment against the contesting curators from which an appeal has been duly perfected to this court.

## OPINION.

### I.

BOND, J. (After stating the facts as above.) — The interpretation of the deed copied in the statement is the first question for review. It is insisted by appellants that the terms of that instrument did not create an estate upon condition subsequent, and hence the grantors — the Halls — and *a fortiori*, their assignees, have no right of re-entry.

It is also urged by appellants that the terms of the deed created an irrevocable public charity for educational purposes, which could not be diverted to the building of a denominational church, therefore it cannot be awarded to the trustees of the Methodist Church

at Carthage, Missouri (plaintiffs), to erect a church edifice.

The decision of these two points will necessarily involve the decision of the contrary contentions made by respondents. Taking them in turn: An inspec-

**Reversion: Condition Subsequent.** tion of the deed in the light of the applicatory law discloses from its terms that no condition subsequent was annexed to the grant of the estate. While a condition subsequent may be inserted in a conveyance of lands in fee without using express terms of reverter upon the breach of such condition, if the deed in its entirety and the circumstances attending its execution, demonstrate that the object of the grantors was to cause a reversion of the estate upon the subsequent happening of a lawful condition; yet no such conclusion will be drawn if it may be avoided by any other reasonable construction of the language of the deed. This is the settled policy of the law. The reason of which is, that estates once *vested in fee,* ought not to be up-rooted, except upon proof of the happening of a lawful condition attached to the continuance of the estate by the terms of the deed, and further proof that it was the intention of the grantor in making the conveyance that it should revert when this condition ceased to exist. [Morrill v. Railroad, 96 Mo. 174; Krueger v. Railroad, 185 Mo. 227; Roberts v. Crume, 173 Mo. l. c. 581; Ellis v. Kyger, 90 Mo. 600; Studdard v. Wells, 120 Mo. 25; Messersmith v. Messersmith, 22 Mo. 369; Moore v. Wingate, 53 Mo. 398; O'Brien v. Wagner, 94 Mo. 93; Haydon v. Railroad, 222 Mo. l. c. 139; Lackland v. Hadley, 260 Mo. 539.]

The language in the deed in question does not bring it within the scope of this rule or its reason. The deed is a conveyance in fee with general and special warranty made by Hall and wife to an incorporated seminary of learning. The motive of the gift was Christian charity. The object of the gift was "the use and benefit" of the school "especially for the endow-

ment of the President's chair in memory'' of a son of the givers. There is nothing in any of these quoted terms nor the contents of the entire deed, which measures the continuance of the fee vested by the deed, upon the happening or nonhappening of any condition or event specified in the instrument. Since the deed contains no provision in terms, or by equivalent language, that the estate conveyed should be *forfeited* upon any subsequent event, it necessarily follows that no clear implication can be contained in the language of the deed, that it was the intention of the grantors, that the estate conveyed in fee should *revert* to them or their heirs. It follows that the conveyance or assignment by the wife and children of Mr. Hall of the interest of the grantors under the deed in question carried no rights of reversion or re-entry, because none remained in the grantors after the execution by them of the unconditional grant of the property described in their deed. At common law such rights, if they inhered in the grantors under the terms of a deed made by them, would be restricted to their heirs. That rule seems to be modified by our statute permitting the assignment of any interest whatever in real estate. [R. S. 1909, sec. 2787; Allen v. Kennedy, 91 Mo. 324.] And such is the holding in other jurisdictions. But this point need not be decided, since in the instant case no rights of reversion or re-entry inured to the grantors, or their heirs, by the terms of the deed under review. Hence, they could assign none to the plaintiffs.

## II.

The only question remaining is whether it appears from the language of the deed and the circumstances under which it was made that it was the purpose and object of the grantors to create a public, as contra-

**Charity: Definition and Purposes.** distinguished to a private, charity. At the time it was executed, Mr. Hall was a member of the corporation—Scarritt Col-

legiate Institute, to which the gift was made. He was necessarily informed of the objects for which that corporation was created—the general education of all pupils of either sex, who should seek its training and instruction. This was the declared object for which the institution was chartered. In making a gift for its "use and benefit" it was presumptively his purpose to subserve the objects and purposes for which it was created. The fact that the deed further provided for a specific use of the lands, or their proceeds, by applying them to the maintenance of one of the professorships of the school, does not alter the charitable nature of the gift. The institution could not carry on its business of education without the aid of the president nor the instruction imparted by him as a member of its faculty. By appropriating the gift to that specific purpose so much of the other revenues of the school as would have been necessary to support that chair, were left free to be used for other departments or its general support. This designation of the use to be made of the property conveyed by the deed was none the less a gift to the educational purposes for which the school was established, than if it had been provided for general support of all of its faculty rather than for the maintenance of a single professorship; for the instruction of that chair, like all others, was open to any student prepared to receive it. It is of the essence of a public charity that it should be for the benefit of the public at large or some portion thereof, or upon an indefinite class of persons. In a recent work, it is said:

"Probably the most comprehensive and carefully drawn definition of a charity that has ever been formulated is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting

or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature. Another definition capable of being easily understood and applied is that given by Lord Camden as follows: 'A gift to a general public use, which extends to the poor as well as the rich.' The theory of this is that the immediate persons benefited may be of a particular class, and yet if the use is public in the sense that it promotes the general welfare in some way, it has the essentials of a charity.'' [Ruling Case Law (5 R. C. L.), pp. 291-292.]

The same book in referring to the multiform purposes of a public charity states the law as follows:

''Reverting to the definition of a legal charity, it will be easily seen that it is impossible to specify the innumerable objects or purposes for which a charitable trust may be created. The difficulty is inherent in the subject-matter itself. A charitable trust or a charity is a donation in trust for promoting the welfare of mankind at large, or of a community, or of some class forming a part of it, indefinite as to numbers and individuals. It may, but it need not, confer a gratuitous benefit upon the poor, or look to the care of the sick or the insane, or seek to spread religion or piety. Schools and libraries, equally with asylums, hospitals, and religious institutions, are included within its scope. Therefore the enforcement of charitable uses cannot be limited to any narrow and stated formula. As has been well said, it must expand with the advancement of civilization and the daily increasing needs of men. New discoveries in science, new fields and opportunities for human action, the differing condition, character and wants of communities and nations, change and enlarge the scope of charity, and where new necessities are created new charitable uses must be established. The underlying principle is the same; its application is as

varying as the wants of humanity.  Charity in its legal sense comprises four principal divisions: *trusts for the relief of poverty; trusts for the advancement of education; trusts for the advancement of religion; and trusts for other purposes beneficial to the community, not falling under any of the preceding heads.*  The trusts last referred to are not the less charitable in the eye of the law, because incidentally they benefit the rich as well as the poor, as indeed every charity that deserves the name must do, either directly or indirectly.''  [5 R. C. L. 322-323.]

The language of the deed under review shows that the grant, in the light of the purposes for which the grantee was organized, was a public charity falling under the head of the second division mentioned above.  That is, that it was the object of the grantors to create a charitable trust for *the advancement of education* and this was none the less the general purpose of the founders of the charity though they designated it should be specifically applied to the principal chair of instruction, provided by the institution for its educational work, and that it should memorialize the name of a son of the grantors.  This designation only pointed out the particular use which should be made of the portion of the revenue accruing to the Scarritt Collegiate Institute from this donation, and enabled it to be referred to ''as the Hall Memorial Fund,'' thereby identifying it and distinguishing it from other endowments or revenues belonging to the educational corporation.

Our conclusion is that it was the purpose of the grantors and the effect of their deed to vest in the grantee a charitable trust of the proceeds of the property conveyed for educational purposes and that this donation created a public charity.  [Crow ex rel. v. Clay County, 196 Mo. 234; Women's Christian Assn. v. Kansas City, 147 Mo. l. c. 123-4; 6 Cyc. 900.]

## III.

The important question under the facts in this record is what disposition must be made of the fund in controversy?

The conceded facts show that, after using such fund for a number of years, the Scarritt Collegiate Institute abandoned at Neosho, Missouri, the purposes for which it had been incorporated, and became merged, under a proper decree of incorporation, with another institution of learning under the name "Scarritt-Morrisville College." That a receiver has been appointed of the assets of the Scarritt Collegiate Institute under a decree of dissolution, and is now in possession of the fund given to it as a charitable trust.

*Charity: Application and Disposition of Fund.*

The record further discloses that the church conference, under whose control and supervision the Scarritt Collegiate Institute carried on its educational work, has directed the curators of that dissolved corporation to turn over the charitable fund to the plaintiffs, who are the trustees of the Methodist Church at Carthage, to be used by them in building a house of worship, and that this has been assented to by the curators of the Scarritt-Morrisville College, located at Morrisville, Polk county, Missouri. We are unable to assent to that disposition of the charitable property, in view of the established principles in this State and elsewhere, governing the administration of a public charity by courts of equity.

The application of the doctrine of *cy pres* by the crown's prerogative under the sign manual of the king through his chancellor has no place in the courts of law or equity in this country. But the doctrine of judicial administration of *cy pres,* whereby courts of equity in virtue of their inherent jurisdiction approximate the intention of the founder of a public charity, or the maker of a will, or the parties to a contract looking to

the future, is universally applied in Missouri and other States of the Union.  [5 R. C. L., Titles—Charities, secs. 104-105, 7 L. R. A. (N. S.) 471.]

In virtue of its powers in this respect, courts of equity in this State will often vary the details of administration of a charity in order to effectuate the paramount purpose of its founder, but they will not alter the charity itself or substitute another for it.  [Lackland v. Walker, 151 Mo. 210, and cases cited; Lackland v. Hadley, 260 Mo. 539; Hadley v. Forsee, 203 Mo. 1. c. 428.]

In the case at bar, the charitable trust was created to aid the work of an incorporated educational institution.  The paramount purpose of the giver of the charity was the advancement of learning.  That purpose a court of equity has no power to thwart or alter. But it has full authority to effecuate that purpose by varying the administration of the charity, if necessary to accomplish the object of the charitable trust, and, in so doing, it is only exercising the judicial power of administering *cy pres,* which is an essential attribute of courts of chancery.

The case first cited, Lackland v. Walker, supra, contains an exhaustive discussion of the powers of courts of equity in this respect, and affirms the doctrine that an unconditional public charity is irrevocable and perpetual, leaving no interest whatever in the founder, his heirs or assigns; that its general object cannot be essentially altered or displaced by judicial action, which is restricted to the preservation and enforcement of the charity established, and not another—by such changes in the method and details of its administration, as will conduce to the objects had in view when it was created.  Applying that principle to the case at bar, the custodians of the fund in controversy should be required to deliver it to the institution of learning with which the original grantee has been combined in order to carry on its educational work, upon a trust

imposed upon that corporation to apply this fund as a memorial endowment, to the support of a president's chair, as directed in the original deeds.

This direction is made for the reason that, the consolidated college has preserved the distinctive name of the former trustee of the charity and is doing the *same work* under the same denominational supervision. And to make it the medium of the dispensations of the charity of the founder will not in any way alter the objects of the gift or the means it was designed to employ—endowment of a president's chair—neither will there be any change in ecclesiastical control, for the new college, as was the former, is conducted under the auspices of the Methodist Episcopal Church, South. The fact that the curators of the succeeding college, prior to judicial construction of its rights, were willing to turn over the charitable funds for the construction of a church building at Carthage, creates no estoppel against the corporation represented by them and, least of all, does not preclude the students who are the real beneficiaries of the educational instruction, which the gift is designed to provide.

No other disposition of the fund could be made under existing conditions without creating a different charity from that defined by the givers. To devote it to the erection of a memorial church would contravene the expressed purposes of the gift, just as much as if it were applied to the erection of a hospital. In effect, it would create a religious charity, instead of the educational one provided by the deeds. This the courts have no power to do. They can conserve and effectuate the one created by its author, and to that end, they may alter the details and agencies of administration, but they cannot substitute an essentially different scheme of public benefaction for the plan specifically designated by the givers.

This conclusion works a judicial administration *cy pres* the charitable trust created without altering its

purposes, objects and uses. If necessary to the accomplishment of these directions, the Attorney-General may become a party to a proper proceeding.

It follows that the judgment of the trial court is reversed and the cause remanded, to be proceeded with in a manner not inconsistent with this opinion. All concur except *Brown, J.,* who dissents, and *Blair, J.,* who takes no part, not having heard the argument.