LANIER, Judge.
This suit commenced as an action to enjoin a municipality from revoking a bingo permit without a hearing. The trial court issued a temporary restraining order against the municipality. In a supplemental and amending petition, the nonprofit corporation alleged, in the alternative, that it was entitled to a writ of mandamus to compel the municipality to issue a new and valid bingo license to it and/or conduct a *646 hearing as required by law. After a hearing on the merits, the trial court held the nonprofit corporation was not a charitable organization within the purview of the municipality's bingo ordinance and dismissed the petition. The nonprofit corporation took this suspensive appeal and requested the trial court to stay execution of the judgment pending the appeal. The trial court refused to do so. The nonprofit corporation applied to this court for a supervisory writ contending the trial court abused its discretion in refusing to grant a stay order. This court found no abuse of discretion and denied the writ.
FACTS
The Exotic Feline Survival Association, Inc. (Feline) was incorporated effective November 30,1983, as a nonprofit corporation under Louisiana law. Feline was domiciled in Springfield in Livingston Parish, Louisiana, and Raymond N. Long was the sole incorporator. The Articles of Incorporation provides that Feline “shall possess all the powers, rights, privileges, capacities and immunities which non-profit corporations are authorized” by law. The objects and purposes of the corporation were set forth as follows:
To take for normal animal husbandry practices and to deliver, receive, carry, transport or ship in interstate commerce in the course of a commercial activity; or sell or offer for sale in interstate commerce, any Endangered or Threatened wildlife that is bred in captivity in the United States, that has a natural geographic distribution not including any part of the United States and that is taxonomically included in the Family Fe-lidae for the purpose of enhancement of propogation or survival.
The corporate powers and management were vested in a one member board of directors elected annually at the general meeting of members. The corporate officers were a president (who was the board of directors) and a secretary-treasurer. The corporation was organized on a non-stock basis with four classes of members: active, honorary, life and junior. Long was designated the first director and president. By authentic act dated July 30, 1984, the objects and purposes of the corporation were amended to provide as follows:
To take for normal animal husbandry practices and to deliver, receive and protect any Endangered or Threatned [sic] wildlife that is bred in captivity in the United States, that has a natural geographic distribution not including any part of the United States that is taxo-nomically included in the Family Felidae for the purpose of enhancement of propo-gation or survival.
On September 18, 1984, pursuant to the authority of La.R.S. 33:4861.1 et seq., the City of Hammond (City) enacted an ordinance providing for charitable raffles, bingo and keno. Section 6-32(4) of the ordinance defined a “Charitable Organization” for purposes of the ordinance as “any bona fide veterans, charitable educational, religious, fraternal organization, civic or service club which is domiciled in Hammond, Louisiana.” Pursuant to Section 6 — 33(B)(1) of the ordinance, each applicant for a bingo permit had to certify that “the entire net proceeds of the raffle or bingo or super bingo or keno games are to be devoted to educational, charitable patriotic, religious or public spirited uses.”
On October 22, 1984, Feline was granted tax exempt status by the Internal Revenue Service.
By letter dated November 12, 1984, Feline (through its attorney) sought a bingo permit from the City for November 24, 1984, at the Cefalu Coliseum at Southeastern Louisiana University. The letter stated Feline “exists for the preservation of endangered species of the exotic feline family” and that the net proceeds of the bingo would be used “for the purchase of food, supplies and veterinary services for some 70 members of the exotic cat family currently housed on the premises of the organization.” On November 27, 1984, the City granted Feline a two day license for the bingo game. (The license shows it was good from January 1, 1984, to December *647 31, 1984, but the testimony shows it was only a $10 license for November 27 and 28, 1984.)
By letter dated December 6, 1984, counsel for Feline asked Randall W.J. Tricou, the City’s tax collector, how the bingo license could be renewed for 1985. On January 7, 1985, Tricou advised counsel for Feline that the bingo license had been approved and the annual license fee of $100 should be sent. On January 10, 1985, Feline formally applied for the bingo license and tendered the $100 fee.
By letter dated January 11, 1985, Tricou advised Feline that the bingo permit application could not be accepted for the following reasons:
1. Your association is a Livingston Parish domiciliary and our ordinance strictly governs Hammond domiciliary.
2. Lack of sufficient information concerning your organization relative to its charitable impact on the Hammond community.
3. Lack of sufficient records as to your membership and how your membership will conduct the bingo.
4. Lack of sufficient information for this office to determine whether your organization is a “bona fide veterans, charitable, educational, religious or fraternal organization.”
Tricou further advised Feline that its application would be further evaluated at the mayor’s office at 6:30 p.m. on January 15, 1985.
This suit was filed on January 11, 1985.
The meeting was held as scheduled. The following persons were present at the meeting: (1) the mayor, Debbie S. Pope; (2) Tricou; (3) Reggie McIntyre, city attorney; (4) John Feduccia, assistant city attorney; (5) Roddy Devall, chief of police; (6) Long, Feline’s president; and (7) Charles G. Walker, attorney for Feline. Feline presented information to show the bingo games would be held at a skating facility in Hammond and would be operated by bona fide members of Feline who received no salary or other compensation. Also, pursuant to an authentic act dated November 12, 1984, which was recorded and effective on January 15, 1985, Feline changed its corporate domicile to Hammond, Louisiana. The evidence presented by Feline at the meeting showed that the proceeds of its proposed bingo games would be used for the feeding and care of its animals. On advice of the city attorney, Tricou denied the permit application on the basis that Feline was not a bona fide charitable organization.
The trial in this matter was held on February 11,1985, and the trial judge rendered his judgment on March 13, 1985.
At the trial, Long, on behalf of Feline, testified Feline was then caring for 69 animals at a facility near Springfield in Livingston Parish. Feline had a permit to do its work from the United States Fish and Wildlife Service (USF & W). The animals come to Feline from circuses, zoos and USF & W. It costs approximately $20,000 per month to care for the animals. Feline’s operating money comes from donations. The bingo money would be used for the feeding and care of the animals. The facility where the animals are kept is open to the public and no admission is charged. No bingo money would go to an individual. The workers who care for the animals and work at the skating rink are paid by Long’s business corporation. The business corporation donates these services. It was stipulated that the testimony of Dr. Dale Peru, a veterinarian, and Butch Wall, a Feline member, would be similar to that of Long.
IS FELINE A CHARITABLE ORGANIZATION?

(Assignments of Error 1 and 2)

Feline contends the trial court committed error by holding it was not a charitable organization. The trial court ruled a charitable organization “is one whose altruistic purpose is to benefit, in some way, members of the human race”, and since the principal purpose of Feline was “the preservation and maintenance of exotic animals,” it did not qualify. The trial court *648 relied on the definitions of charity and charitable found in Webster’s New Collegiate Dictionary, eighth edition.
For many years, the constitutions of Louisiana have directed the legislative branch of state government to define and suppress gambling. Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515 (La.1983). The legislature has enacted several statutes to achieve this purpose. See the statutes discussed in Theriot, 436 So.2d at 517-518 and State v. Opelousas Charity Bingo, Inc., 462 So.2d 1380 (La.App. 3rd Cir.1985). In defining and proscribing gambling, the legislature has carefully provided in the Charitable Raffles, Bingo and Keno Licensing Law, La.R.S. 33:4861.1 et seq., what activities do not constitute unlawful gambling. La.R.S. 33:4861.3 provides, in pertinent part, that the “governing authority of each such municipality shall decide whether charitable raffles, bingo and keno as provided for in this Part shall be permitted within the limits of the municipality.” (Emphasis added). La.R.S. 33:4861.4(A) gives authority to municipalities to permit such activities, in pertinent part, as follows:
It shall be lawful for any incorporated municipality ... to license bona fide veterans, charitable, educational, religious, or fraternal organizations, civic and service clubs, to hold and operate the specific kind of game or games of chance commonly known as raffle, ... bingo or keno ... when the entire net proceeds of such games of chance, are to be devoted to educational, charitable, patriotic, religious, or public spirited uses, and when so licensed, to hold, operate, and conduct such games of chance exclusively by its active members pursuant to this Part and for such licensee in such municipality ... to sell shares or tickets or rights to participate in such game or games of chance therein, and under such conditions and regulations for the supervision and conduct thereof, as shall be prescribed by rules and regulations duly adopted, from time to time, by the municipality ... not inconsistent with the provisions of this Part, and for any person or persons to participate in and play such games of chance conducted under any license. (Emphasis added).
Unless Feline qualifies under this State law, it cannot lawfully conduct a bingo.
The evidence is clear that Feline is not a veterans, religious or fraternal organization, or a civic and service club. Because the principal purpose of Feline (according to its Articles of Incorporation) is to use animal husbandry practices and deliver, receive and protect certain designated felines to enhance their propogation or survival, Feline is not an educational organization, although some of its activities may produce collateral educational benefits. Thus, Feline can only qualify under State law and the City’s ordinance if it is a charitable organization.
The words of a law should be understood in their most usual signification (general and popular use). La.R.S. 1:3; La.C.C. art. 14; State v. Brady, 310 So.2d 593 (La.1975). In Webster’s Ninth New Collegiate Dictionary (1984), charitable is defined as follows:
1: full of love for and goodwill toward others: BENEVOLENT 2a: liberal in benefactions to the needy: GENEROUS b: of or relating to charity ... 3: merciful or kind in judging others: LENIENT
Charitable is defined at page 212 in Black’s Law Dictionary (5th ed. 1979), as follows:
Having the character or purpose of a charity. The word “charitable”, in a legal sense includes every gift for a general public use, to be applied consistent with existing laws, for benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. American Soc. for Testing and Materials v. Board of Revision of Taxes, Philadelphia County, 423 Pa. 530, 225 A.2d 557. This term is synonymous with “beneficent”, “benevolent”, and “eleemosynary”. See also Charity; Eleemosynary.
In 14 C.J.S. Charities § 2(a), pp. 416-418, appears the following:
*649 A charitable institution has been defined as one for the relief of a certain class of persons, either by alms, education, or care, a corporate body or establishment instituted and organized for public use, a public institution partaking of some of the duties of government. A charitable corporation, in the popular acceptation, is one that freely and voluntarily ministers to the physical needs of those pecuniarily unable to care for themselves. As frequently stated, charitable associations, corporations, or institutions are such as are constituted for the perpetual distribution of the free alms of the founders of, and the contributors to, them, to such purposes and in such manner as they have directed. Their principal aim is to benefit needy ones in other ways than by improving their morals, although sometimes a corporation formed for the purpose of accomplishing the moral reformation of a certain class of people is treated as a charitable institution. Their principal and distinctive features are that they have no capital stock and no provision for making dividends or profits, but derive their funds mainly from public and private charity and hold them in trust for the object of the institutions. In other words, the test of whether an enterprise or institution is charitable is whether it exists to carry out a purpose recognized in law as charitable, or whether it is maintained for gain, profit, or private advantage. As sometimes stated, in order that a corporation may be regarded as a public charity its controlling purpose must be for the common and public benefit. (Footnotes omitted). (Emphasis added).
The common thread in all of these definitions is beneficence to people. Thus, the trial court correctly ruled that Feline “does not qualify as a charitable organization under the general usage of that term since the recipients of its avowed charitable intention are exotic animals, not human beings.”
These assignments of error are without merit.
EVIDENCE OF OTHER BINGOS TO BENEFIT ANIMALS

(Assignment of Error 3)

At the trial, Feline attempted to call Pamela Casey, the President of the Jefferson Parish Society for the Prevention of Cruelty to Animals, to show that in other jurisdictions bingo permits had been granted to organizations whose purpose was to benefit animals. The City objected on the grounds that no proper foundation for receipt of the evidence was presented until the pertinent enabling ordinances were introduced into evidence. Feline argued all local ordinances were controlled by State law. The trial court ruled it would receive the evidence if the pertinent enabling ordinances were identical to the City’s ordinance. Feline did not have the ordinances and Casey’s testimony was submitted on a proffer. Feline contends the trial court erred in not considering this evidence.
It appears that La.R.S. 33:4861.-4(A) gives municipalities authority to grant bingo, keno and raffle permits to designated organizations pursuant to rules and regulations adopted by the municipality which are “not inconsistent with the provisions of” State law. If it is conceded that the word charitable (as used in the State law and the City’s ordinance) is ambiguous, then it could be urged that the contemporaneous construction given to that word by others who are controlled by it, is entitled to weight in determining the meaning of the word (and, thus, the law). Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984). However, after researching the definition of charitable in the context used, we do not find its meaning ambiguous. Further, even if we consider the proferred evidence, our ruling would remain the same.
This assignment of error is without merit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.