M'Shoogy Animal RESCUE, Appellant,

v.

Ronald CHRISTMAS, Assessor Andrew County, Missouri, Respondent.

No. WD 69830.

Missouri Court of Appeals, Western District.

Nov. 24, 2009.

Richard W. Johnson, for Appellant.

Steven L. Stevenson, for Respondent.

Before Division Two: VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and MARK D. PFEIFFER, Judge.

JOSEPH M. ELLIS, Judge.

M'Shoogy Animal Rescue ("M'Shoogy") appeals the denial of its request for an *ad valorem* tax exemption under § 137.100(5) and article X, section 6 of the Missouri Constitution for its animal rescue facility. For the following reasons, that decision is reversed.

M'Shoogy owns a home on a parcel of land at 11519 State Route C in Andrew County. M'Shoogy also owns an adjacent parcel of land. Both the property and the home are used by M'Shoogy to house and to provide medical treatment for rescued injured or abandoned animals in the region. M'Shoogy is licensed by the State to rescue and care for sick and injured wildlife and by the federal government to rescue and care for migratory birds. M'Shoogy also provides low-cost veterinary services for the public and conducts educational tours and programs on the property. M'Shoogy is exempt from income taxation under 26 U.S.C. § 501(c)(3) and is exempt from state sales and use

taxes as a charitable organization under § 144.030.2(19).[1]

In July 2006, the Andrew County Tax Assessor assessed the value of M'Shoogy's two parcels at $31,380 and $27,270 respectively. M'Shoogy appealed those assessments, claiming an exemption from *ad valorem* taxation on the basis that the property was being used for non-profit, charitable purposes. The county board of equalization upheld the assessment. M'Shoogy subsequently paid the assessed taxes on the property under protest for that year and each following year.

M'Shoogy further appealed and was heard by a hearing officer for the State Tax Commission on May 15, 2007. The hearing officer found that M'Shoogy used the property to rescue and house injured and abandoned animals, to provide low-cost veterinary services to the public, and to conduct educational tours and programs. In denying an exemption to M'Shoogy, the hearing officer concluded as a matter of law that housing and caring for rescued animals was not a charitable use because such uses did not benefit people. The hearing officer concluded that "[c]harity is rendered toward persons, individuals, people, not animals." The hearing officer further found that the evidence of educational uses of the property was insufficient because M'Shoogy failed to establish how frequently educational activities occurred and the nature of the education provided.

M'Shoogy appealed that decision to the State Tax Commission, which affirmed the hearing officer's decision. The Commission concluded that the hearing officer was correct as a matter of law that the care and keeping of animals was not a charita-

---

1. All statutory references are to RSMo 2000 unless otherwise noted. Section 144.030.2(19) exempts from state sales and use tax "[a]ll sales made by or to religious and charitable organizations and institutions in their religious, charitable or educational functions or activities."

ble use of the property under § 137.100(5). The Commission further found that the evidence was insufficient to establish that the property was used for educational activities or that the uses of the property provided any other direct benefit to human beings. With regard to M'Shoogy's claims of lessening of a governmental burden, the Commission noted that the record did not contain any evidence that the existence of M'Shoogy had allowed the government to do away with an animal control facility and that the record was, therefore, also deficient in that regard. The Commission found that M'Shoogy's actions in providing assistance in the handling and treatment of wild and domestic animals at the request of state and local enforcement agencies was an action of the organization and was not a use of the property because the property "simply houses" those animals so rescued.

On November 9, 2007, M'Shoogy filed a petition for trial *de novo* in the Circuit Court of Andrew County.[2] In his answer to that petition, the county assessor opposed having an evidentiary hearing in the trial *de novo* contending that there was no dispute as to any of the material facts and that the only issue to be determined by the trial court was whether animal rescue could be a charitable use of the property. The trial court determined that a trial *de novo* was not necessary because M'Shoogy had had an opportunity to present any evidence to the hearing officer. After taking the matter under advisement, on May 21, 2008, the trial court entered its judgment affirming the decision of the Commission.

In its sole point on appeal, M'Shoogy contends that the Commission erred in denying it an exemption from *ad valorem*

taxation under § 137.100(5) and article X, § 6 of the Missouri Constitution because its non-profit animal rescue and care facility serves a charitable purpose by housing and caring for sick and injured animals and operating a low-cost veterinary clinic open to the public. M'Shoogy further argues that the record establishes that it reduces a governmental burden by retrieving and caring for injured animals.

 "This Court reviews the decision of the Commission and not the decision of the trial court." *Board of Educ. of City of St. Louis v. Daly*, 272 S.W.3d 228, 232 (Mo.App. E.D.2008). We are "limited to determining whether the commission's decision is supported by competent and substantial evidence upon the whole record or whether it was arbitrary, capricious, unreasonable, unlawful, or in excess of the commission's jurisdiction." *Snider v. Casino Aztar/Aztar Mo. Gaming Corp.*, 156 S.W.3d 341, 346 (Mo. banc 2005). "When the Commission's decision is based on its interpretation and application of law, [however,] we review its conclusions of law *de novo*." *Herky, LLC v. Holman*, 277 S.W.3d 702, 704 (Mo.App. E.D.2008).

 In concluding that caring for and housing injured or abandoned animals is not charitable, the Commission misstated and misapplied the law. While the Commission criticizes M'Shoogy for failing to provide citations in support of its claim that organizations that provide benefit to animals or the environment have been accepted as qualified charities under both federal and state laws, the Commission fails to cite to any case holding to the contrary. A cursory search of the case law in other jurisdictions clearly reflects that the overwhelming majority of jurisdic-

---

**2.** M'Shoogy would likely have been better served requesting a trial de novo in the circuit court immediately following the decision of the board of equalization as allowed by § 138.430.3 where the dispute involves exemption of the property from assessment.

tions have held that organizations benefiting animals have been deemed to have a charitable purpose.

■ Article X, § 6 of the Missouri Constitution exempts from taxation "all property, real and personal, not held for private or corporate profit and used exclusively ... for purposes purely charitable." Similarly, § 137.100(5) exempts form taxation "[a]ll property, real and personal, actually and regularly used ... for purposes purely charitable and not held for private or corporate profit." "The phrase 'used exclusively' refers to the primary and inherent use as opposed to a mere secondary or incidental use." *Bethesda Barclay House v. Ciarleglio*, 88 S.W.3d 85, 94 (Mo.App. E.D.2002).

In *Franciscan Tertiary Province of Missouri, Inc. v. State Tax Commission*, 566 S.W.2d 213, 219–220 (Mo. banc 1978), the Missouri Supreme Court established a three-pronged test for determining whether property was exempt from taxation as charitable. "First, the property must be owned and operated on a not-for-profit basis so that there can be no profit, presently or prospectively, to individuals or corporations. The property need not always be operated at a deficit, but any profit must be achieved incidentally to accomplishment of the dominantly charitable objective and may not be a primary goal of the project." *Sunday Sch. Bd. of S. Baptist Convention v. Mitchell*, 658 S.W.2d 1, 5 (Mo. banc 1983) (internal citations and quotations omitted). "Second, the proper-ty must be dedicated unconditionally to the charitable activity." *Id.* (internal quotation omitted). "Third, the dominant use of the property must be for the benefit of an indefinite number of people, and there must also be direct or indirect benefit to society...." *Id.* (internal quotation omitted).

■ Charity is not defined in the either the Missouri Constitution or by statute. Its definition has been developed in the case law. *Franciscan Tertiary* utilized the definition of charity set forth in *Salvation Army v. Hoehn*, 354 Mo. 107, 188 S.W.2d 826, 830 (1945). 566 S.W.2d at 219–20. In *Hoehn*, the Missouri Supreme Court observed:

> Probably the most comprehensive and carefully drawn definition of a charity that has ever been formulated is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.

188 S.W.2d at 830 (quoting *Ahrens v. Martin (In re Rahn's Estate)*, 316 Mo.492, 291 S.W.120, 128 (1926) (quoting with approval language from an English common law case)).[3] This definition was adopted from the English common law.[4] *Catron v. Scar-*

---

3. "These cases dealt with charitable gifts, but charity is charity and the legal concept of charity expressed and reflected in these cases is, we think, applicable to the present facts." *Salvation Army v. Hoehn*, 354 Mo. 107, 188 S.W.2d 826, 830 (1945).

4. *Catron v. Scarritt Collegiate Inst.*, 264 Mo. 713, 175 S.W. 571, 573 (1915) further states:

> Reverting to the definition of a legal charity, it will be easily seen that it is impossible to specify the innumerable objects or purposes for which a charitable trust may be created. The difficulty is inherent in the subject-matter itself. A charitable trust or a charity is a donation in trust for promoting the welfare of mankind at large, or of a community, or of some class forming a part of it, indefinite as to numbers and individu-

*ritt Collegiate Inst.*, 264 Mo. 713, 175 S.W. 571, 573 (1915) (citing 5 *R.C.L.* 291, 292).[5]

Both the courts of England and those jurisdictions in the United States that have addressed whether organizations housing, caring for, or promoting the welfare of animals are charitable under this definition have overwhelmingly found these activities to be charitable in nature. *See More Game Birds in Am., Inc. v. Boettger*, 125 N.J.L. 97, 14 A.2d 778, 780 (1940) ("The English courts . . . have rec-ognized that trusts in perpetuity for the benefit of animals may be valid charitable trusts. American courts have, generally speaking, adopted the same view."). "The grounds on which trusts for the benefit of animals are held charitable seems to be, that such trusts are for the benefit of mankind, although sometimes the fact that the animals benefit is considered to be sufficient." [6] *Johnston v. Colorado State Bureau of Child & Animal Prot. (In re Forrester's Estate)*, 86 Colo. 221, 279 P. 721, 723 (1929) (internal quotation omitted).

als. It may, but it need not, confer a gratuitous benefit upon the poor, or look to the care of the sick or the insane, or seek to spread religion or piety. Schools and libraries, equally with asylums, hospitals, and religious institutions are within its scope. Therefore the enforcement of charitable uses cannot be limited to any narrow or stated formula. As has been well said, it must expand with the advancement of civilization and the daily increasing needs of men. New discoveries in science, new fields and opportunities for human action, the differing condition, character, and wants of communities and nations, change and enlarge the scope of charity; and, where new necessities are created, new charitable uses must be established. The underlying principle is the same; its application is as varying as the wants of humanity.

175 S.W. at 574.

5. "The English statute of charitable uses and the principles of applicable law which antedated the statute are in force in Missouri." *Burrier v. Jones*, 338 Mo. 679, 92 S.W.2d 885, 890 (1936).

6. *See, e.g., In re Coleman's Estate*, 167 Cal. 212, 138 P. 992, 993 (1914) ("Gifts to benefit man through the medium of benefiting animals are good charities."); *In re Graves' Estate*, 242 Ill. 23, 89 N.E. 672, 674 (1909) ("Kindness and consideration for dumb animals are now universally regarded as commendable, and are encouraged and promoted by numerous humane societies which are organized and maintained with this sole purpose in view. The motives which prompt bequests intended to relieve the suffering or increase the comfort and enjoyment of ani-mals should be, and are, regarded as charitable, and should receive the same favorable consideration accorded like sentiments when manifested on behalf of human beings."); *Holbrook Island Sanctuary v. Inhabitants of Brooksville*, 161 Me. 476, 214 A.2d 660, 664–65 (1965) (quoting *Restatement, Trusts* (2nd) § 374) ("A trust to prevent or alleviate the suffering of animals is charitable. Thus, a trust for the prevention of cruelty to animals, or a trust to establish a home for animals, or a trust for the prevention or cure or treatment of diseases or of injuries to animals, is charitable."); *Dean v. Bennett (In re Swayze's Estate)*, 120 Mont. 546, 191 P.2d 322, 329 (1948) ("The intention . . . to afford care and protection to and alleviate the sufferings of that class of animals which by domestication contribute to comfort, pleasure and well-being of man; and it is not questioned that such a gift is a proper charitable use."); *Pitney v. Bugbee*, 98 N.J.L. 116, 118 A. 780, 781 (1922) ("Man is benefited by benefiting animals."); *In re Hamilton's Will*, 270 A.D. 634, 63 N.Y.S.2d 265, 267 (N.Y.App.1946) (holding the "establishment of an animal home or hospital for the care, comfort and benefit of dumb animals" is a charitable use); *Gangi v. Board of Appeal of Salem*, 334 Mass. 183, 134 N.E.2d 451, 453 (1956) ("The care and disposal of homeless and neglected animals are no less objects of charity than are the care and treatment of human beings. It is unnecessary to cite the several statutes in this Commonwealth relating to the humane treatment of animals and the disposal of those so vicious and diseased as to constitute a public menace to demonstrate that their treatment and disposal are matters regarded by the Legislature as pertaining to the public welfare.").

"Cruelty, whether to man or beast, is certainly degrading to mankind, and it would seem to follow that the relief of dumb animals from neglect and abuse would tend to further the well-being of society." *Id.* Accordingly, although the terms charitable and charity have frequently been defined in terms of aid and assistance to humans, "the care and comfort of animals is generally beneficial to mankind" and has been deemed to be a charitable purpose. *In re Farm Sanctuary, Inc. v. Patton,* 221 A.D.2d 67, 643 N.Y.S.2d 770, 772 (N.Y.App.Div.1996); *see also Gangi v. Board of Appeal of Salem,* 334 Mass. 183, 134 N.E.2d 451 (1956). In contrast to the abundance of cases finding a charitable use, our research has uncovered only one case that would support the Commission's position that charities can only be for the benefit of humans and not animals, and the rationale adopted by that court was in no way compelling.[7] *See Exotic Feline Survival Assoc. v. City of Hammond,* 479 So.2d 645, 649 (La.Ct.App.1985).

■ We perceive of no reason for Missouri to take a contrary view to that of the vast majority of jurisdictions that have considered the issue. The use of property in rescuing and housing injured and abandoned animals is beneficial to mankind and society in general and, if rendered in a not-for-profit manner, is charitable in nature. The Commission erred as a matter of law in concluding to the contrary.

Respondent argues that the Commission's decision can nonetheless be affirmed based on the other conclusions contained therein. However, the Commission's conclusion that animal rescue is not a charitable use cannot be divorced from its overall conclusion that the property is not used for charitable purposes. Therefore, the conclusions referenced by Respondent are dubious at best.

The Commission found that M'Shoogy did not present any testimony establishing that it provided low cost veterinary services to the public. However, the written testimony of Gary Silverglat,[8] the founder and president of M'Shoogy, which was incorporated by reference at the hearing and comprised the majority of the evidence presented by M'Shoogy, states that M'Shoogy "provide[s] low-cost veterinary services for the public." The written testimony states that the veterinary and spaying/neutering services were provided at or below cost and were offered to the public at large.

As to educational benefits, the Commission adopted the conclusion of the hearing officer that, although testimony was provided that school groups and adults were allowed to attend educational tours and programs at M'Shoogy, "[i]n the absence of definitive evidence of past and continuing educational activities beyond simply conducting a tour of the facilities and explaining about animal rescue, the claim for an exemption on an educational ground fails." While the Commission could properly question the sufficiency of the evidence to establish what percentage of the property usage was for educational purposes, clearly providing tours and educating people about animals and animal rescue is an educational use.

The Commission also discounted M'Shoogy's claim that providing assistance to state and local law enforcement officials in handling injured and abandoned animals

---

7. The court in that case merely noted that the common definitions of charity relate to people and declared that a group was not entitled to an exemption from property tax "since the recipients of its avowed charitable intention are exotic animals, not human beings." *Exot-*

*ic Feline Survival Assoc. v. City of Hammond,* 479 So.2d 645, 649 (La.Ct.App.1985).

8. The Commission requires parties to submit written direct testimony.

helped lessen a governmental burden because "such assistance is an activity of [M'Shoogy], it is not a use of the subject property, which simply houses animals." The Commission found that the housing of the animals could not be deemed to lessen a governmental burden absent evidence that the government had been able to do away with one or more animal control facilities. Clearly, without the use of the property to house, treat, and otherwise care for the animals, M'Shoogy would not be able to retrieve and care for the animals. The Commission's conclusion that M'Shoogy's handling of injured and abandoned animals at the request of state and local law enforcement officials was not related to the property is simply wrong.

■ In short, the Commission misstated and misapplied the law in denying a charitable exemption to M'Shoogy, and its decision is, therefore, reversed. Because of their conclusion that uses for the benefit of animals could not be charitable under the law, both the hearing officer and the Commission expressly did not address the additional issues that arose at the hearing related to the use of a part of the house on the property as a residence[9] and occasional personal use of the claimed motor vehicles. As these issues have yet to be addressed, we remand the case to the Commission to consider them and for further proceedings consistent with this opinion.

All concur.

---

9. The provision of a residence occupied by key personnel, who were necessary to the efficient operation of the charity and needed to be located nearby, may be deemed sufficiently connected to the charitable purpose to justify the claimed exemption. *Abbott Ambulance, Inc. v. Leggett*, 926 S.W.2d 92, 95 (Mo. App. E.D.1996). *Silverglats testified that he and his wife resided in four rooms of the house because someone had to be present 24-hours a day to care for and treat the animals. To the extent this testimony is found credible by the trier of fact, an exemption would certainly seem appropriate.*