STATE of Missouri, at the information of Norman H. ANDERSON, Attorney General, at the Relation of C. C. Tuttle, d/b/a Tuttle's Utility Gas Service, Lawrence Absher, Aaron Medlock, and George R. King, Relators,

v.

OZARK TRANSMISSION DISTRICT, INCORPORATED, Respondent.

No. 51976.

Supreme Court of Missouri,
En Banc.

Dec. 12, 1966.

Lilley & Cowan, Louis W. Cowan, Springfield, for relators.

Morris E. Osburn, Robert L. Hawkins, Jr., Graham & Hawkins, Jefferson City, for respondent.

FINCH, Judge.

This is an original quo warranto proceeding on information by the Attorney General in which relators question the right and authority of respondent, Ozark Transmission District, Incorporated, to construct, own and operate an intrastate natural gas transmission line. The information filed herein asks that respondent be excluded from all corporate rights, privileges and franchises, and that it be adjudged dissolved.

A return was filed by respondent and thereafter a written stipulation was filed in this court, signed on behalf of all the parties, stipulating, for purposes of this proceeding, as to the facts upon which the case was to be submitted. Briefly stated, those facts are recited in the succeeding paragraphs.

Respondent was incorporated March 20, 1964, as a not for profit corporation under the provisions of Chapter 355 (all references are to RSMo 1959 and V.A.M.S.). The three individual incorporators were the mayor of Mountain View, an alderman at Cabool, and a former alderman at Mansfield.

The purposes section of the Articles of Incorporation authorized the corporation to construct, purchase or otherwise acquire a gas transmission system, to own and operate the same, and to supply, distribute and/or sell gas to certain municipalities and others.

With reference to the proposed gas transmission system, the Articles state that the corporation has "as the ultimate civic object and purpose" the eventual vesting by gift of all assets of the corporation existing at the time of such vesting in certain municipalities named in the Articles, together with any other municipalities subsequently added by amendment of the Articles of Incorporation.[1]

---

1. The Article which covers details of distribution of the assets to the municipalities is contained in Article Eighth, as follows:

"Eighth: The corporation has been formed, in part, for the purpose of constructing, acquiring, enlarging or extending a gas transmission system and proposes to issue bonds in order to obtain moneys for such purposes. After the said bonds are fully paid, this corporation shall tender to the Municipalities all of the properties and affairs of this corporation. Upon dissolution of this corporation, title and possession of all of its assets shall, after payment of all of its liabilities, vest in the Municipalities."

Respondent made application to the Public Service Commission of Missouri for a Certificate of Convenience and Necessity to build, operate and maintain a natural gas transmission line originating at a point near Springfield, Missouri, and extending to Thayer. The proposed line, in general, parallels U. S. Highway 60 to Willow Springs and thence proceeds along U. S. Highway 63 to Thayer, with laterals to Marshfield, Houston and Mountain View. It is to be financed entirely from a proposed bond issue to be sold to the public. The Public Service Commission found that respondent herein "proposes to hold itself out as a public utility offering natural gas service to all members of the public in the described area," and issued a conditional Certificate of Convenience and Necessity authorizing respondent to supply natural gas at wholesale to certain named municipalities and at retail to the public in the unincorporated area described. The certificate was contingent upon respondent securing an allocation of natural gas from Cities Service Gas Company pipeline near Springfield, Missouri, and upon respondent receiving a ruling from the Internal Revenue Service of the Treasury Department that any income earned by respondent will be free from the obligation to pay federal income tax and that interest paid on bonds to finance the construction of the project will be tax free to the recipients thereof insofar as federal income taxes are concerned. Respondent now has an application pending before the Federal Power Commission for an allocation of natural gas from the pipeline of Cities Service Gas Company and it has received the required ruling from the Internal Revenue Service.

The Articles provided that respondent corporation should have no members, that no dividends would be paid, and that no part of its income should be distributed to directors or officers except that reasonable compensation for services actually rendered could be paid. A self perpetuating board of directors was provided. This seems to bring the corporation within the definition of a "not for profit corporation" as contained in § 355.015(3):

"(3) 'Not for profit corporation' means a corporation no part of the income or property of which is distributable to its members, directors or officers; provided, however, that the payment of reasonable compensation for services rendered and the making of distributions not representing pecuniary profits or gains upon dissolution or final liquidation, as permitted by this chapter, shall not be deemed a distribution of income or property."

The ultimate issue for determination herein is whether the purposes for which respondent was organized fall within the provisions of § 355.025,[2] which details purposes for which not for profit corporations may be organized under Chapter 355. Respondent relies on the "charitable," "civic" and "social welfare" purposes authorized by § 355.025.

In determining whether the corporate purpose of respondent falls within the "charitable" authorization contained in § 355.025, we must ascertain, as best we can, the legislative intent in connection with

2. Section 355.025 is as follows:
"Not for profit corporations may be organized under this chapter for any one or more of the following or similar purposes: Charitable; benevolent; eleemosynary; educational; civic; patriotic; political; religious; cultural; social welfare; health; cemetery; social; literary; athletic; scientific; research; agricultural; horticultural; soil, crop, livestock and poultry improvement; professional, commercial, industrial, or trade association; wild life conservation; homeowner and community improvement association; and recreational club or association; or for the purpose of executing any trust, or administering any community chest, fund or foundation, to further objects which are within the purview of this section. No group, association or organization created for or engaged in business or activity for profit, or on the cooperative plan, provision for the incorporation of which is made by any of the incorporation laws of this state, shall be organized or operate as a corporation under this chapter.

that chapter. This involves a consideration of the legislative history of the Act, as well as all definitions of "charity" or "charitable" in previously decided cases of this court if the legislative intent is not clear.

The source of our Not For Profit Corporation Act was the Illinois statute found in Illinois Revised Statutes, Chapter 32, and our § 355.025 was taken from § 163a3 [3] of the Illinois Act.

It will be observed that much of our § 355.025 corresponds word for word with § 163a3 of the Illinois statute. The Missouri section added a few purposes such as "cultural," "social welfare," "health," "cemetery," "wild life conservation," "homeowner and community improvement association," and "recreational club or association," but it deleted provisions contained in the Illinois section which permitted not for profit corporations to have as purposes "electrification on a co-operative basis" and "ownership of residential property on a co-operative basis."

What is the significance of the deletion of these phrases by the Missouri general assembly when it took § 163a3 of Chapter 32 of the Illinois Statutes and enacted it as our § 355.025? If, as respondent asserts, the term "charitable" as used therein was broad enough to include the establishment and operation of a utility transmission system to supply such things as natural gas or electricity to a municipality, then we must conclude that the phrase relative to electrification was deleted simply because it was surplusage. We cannot so find. Rather, we conclude that the

general assembly had some affirmative purpose in making the change and that the phrase was deleted because it did not intend to authorize the providing of electrical services on a co-operative basis by a not for profit corporation. This necessarily means that the legislature did not intend that the term "charitable" as used in § 355.025 should be so broad as to authorize the formation under that term of a not for profit corporation to own and operate an electric utility system or a natural gas transmission line, whether it be on a co-operative basis or otherwise.

It is of interest that the Illinois legislature apparently also considered that the term "charitable" as used in their act was not as broad and all-embracing as respondent would construe the term. It not only amended the act to specifically include electrification authorization, but it also amended the act in 1953 to provide as an authorized purpose "telephone service on a mutual or co-operative basis," and in 1961 it added as a further purpose "ownership and operation of water supply facilities for drinking and general domestic use on a mutual or co-operative basis." Respondent's brief suggests that these amendments were simply to remove any doubt respecting the authorization of such purposes, but we conclude that they were intended as authorizations which did not previously exist. Necessarily this means that the purposes authorized in the Illinois statute such as "charitable" and "civic" did not include the furnishing of utility services.

---

3.  Our Not For Profit Corporation Act was adopted in 1953. At that time § 163a3 of the Illinois statute read as follows:
    "Not for profit corporations may be organized under this Act for any one or more of the following or similar purposes: charitable; benevolent; eleemosynary; educational; civic; patriotic; political; religious; social; literary; athletic; scientific; research; agricultural; horticultural; soil, crop, livestock and poultry

improvement; professional, commercial, industrial or trade association; electrification on a co-operative basis; and ownership of residential property on a co-operative basis."
    The 1953 Illinois legislature inserted the words "telephone service on a mutual or co-operative basis" after the words "electrification on a co-operative basis," but this change perhaps occurred after the proposed Missouri Act was drafted.

Respondent cites certain Missouri cases [4] as indicating that this court has adopted a broad concept of "charitable" purpose or use and that if the purpose "serves the public welfare" or "is for the public convenience" or "tends to promote the well-doing and well-being of social man," its purpose is "charitable." It is true that each of these cases cites or quotes from 5 R.C.L. 291, 293, 294, and 323, or other cases which contain broad definitions of the term "charity" or "charitable" and contain some of the phrases used by respondent. However, an examination of the facts in these cases indicate that they dealt with such questions as taxability of the Evangeline Home of the Salvation Army or of low-cost public housing erected in a slum clearance project by the St. Louis Housing Authority, or with trusts of funds for school purposes or Red Cross activities. None of the cases involved situations at all similar to that wherein respondent seeks, on the theory of charitable activity, to own and operate a certificated natural gas transmission line. Language used in those cases does not apply to the kind of activity proposed by respondent except as dictum and in any event it cannot be a basis for construing the language in the statute differently than in accordance with what we have found to be the legislative purpose.

■ Respondent also urges that its purpose as expressed in its Articles of Incorporation also falls within the "civic" and "social welfare" authorizations contained in § 355.025. Definitions of those terms are set out and a few cases from other jurisdictions are cited and discussed. What we have said about the legislative intent in discussing the term "charitable" is applicable here. If, for the reasons we have assigned, the legislature did not intend to include such purposes under the "charitable" authorization, it seems apparent

that it likewise did not intend to do so under the terms "civic" and "social welfare." As heretofore noted, the Illinois legislature did not consider "civic" to include activity of this type.

We are not called upon and do not undertake herein to delineate an overall definition of the "charitable," "civic" and "social welfare" purposes authorized for not for profit corporations under Chapter 355. We leave that for determination in particular fact situations as they arise and we hold herein only that the purpose of owning and operating the natural gas transmission system set out in the respondent's Articles of Incorporation is not an authorized purpose.

■ Respondent refers to Chapter 352, relating to religious and charitable associations which are incorporated by pro forma decree of the circuit court, and asserts that it is clear from Chapter 355 that the legislature intended to make provision for incorporation of a much broader category of enterprises than had been possible under Chapter 352. One apparent purpose of Chapter 355 is to provide a simplified method of incorporation. It also is true that Chapter 355 covers numerous corporations which could not have been incorporated by pro forma decree under Chapter 352. However, we find nothing to indicate an intention that the term "charitable" as used in § 355.025 is to have the broad concept contended for by respondent. Section 355.500 indicates that Chapter 352 remains unchanged. Corporations organized thereunder, as well as corporations organized under the laws relating to profit corporations, may qualify under Chapter 355 if they accept the provisions of the chapter and are in fact not for profit corporations organized for a purpose permissible under Chapter 355.

4. Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W.2d 826; Bader Realty and Investment Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S.W.2d 489; Catron v. Scarritt Collegiate Institute,

264 Mo. 713, 175 S.W. 571; Robinson v. Crutcher, 277 Mo. 1, 209 S.W. 104, and In re Rahn's Estate, 316 Mo. 492, 291 S.W. 120, 51 A.L.R. 877.

These provisions do not bring respondent corporation within the authorized purposes of Chapter 355.

Respondent is found guilty of proposing to operate for purposes not authorized under Chapter 355, as charged in the information of the Attorney General. It is ordered that respondent be dissolved as a not for profit corporation and that it be ousted of its corporate charter and that the State of Missouri, at the information of the Attorney General, at the relation of C. C. Tuttle, d/b/a Tuttle's Utility Gas Service, Lawrence Absher, Aaron Medlock, and George R. King, have and recover its costs herein paid and expended.

All concur.