MORE GAME BIRDS IN AMERICA, INC., A CORPORATION, PLAINTIFF-APPELLANT, v. THEODORE BOETTGER, DEFENDANT-APPELLEE.

Argued May 7, 1940—Decided July 13, 1940.

Before Brogan, Chief Justice, and Justices Parker and Perskie.

For the appellant, *William Henig* (*L. Stanley Ford,* of counsel).

For the appellee, *Breslin & Breslin* (*John J. Breslin, Jr.,* and *James A. Major,* of counsel).

The opinion of the court was delivered by

Perskie, J. The basic question requiring decision in this cause is whether the court below correctly adjudged that defendant was not liable for the balance of his written charitable subscription to plaintiff.

By concession of counsel for the respective parties, this cause, after issue was joined, was submitted to the trial judge, without a jury, for his decision. The record upon which the trial judge reached his decision consists in part of stipulated facts and in part of oral testimony.

From the record so submitted, it appears that plaintiff is a "non-profit corporation." It was organized in 1930 for the purpose of "conserving game birds in America," and to "establish hatcheries, refuges, and to teach vermin control."

At the solicitation of plaintiff's then vice-president and general manager, defendant, on or about May 12th, 1931, signed the following writing the receipt of which was acknowledged by the plaintiff:

"MORE GAME BIRDS IN AMERICA, INC.
580 Fifth Avenue, New York City

In consideration of the gifts of others to 'More Game Birds in America, Inc.,' I subscribe and agree to pay to The Foundation the total sum of $5,000.00, payable in yearly installments of $500.00 each, as and when called for.

This subscription obligation shall be binding upon my heirs, executors and assigns and is made in consideration of the effort by the Treasurer, or other officers or agents of the Foundation, to obtain subscriptions from other individuals, and in consideration of the mutual promises of the subscribers."

In accordance with his undertaking, defendant, between May 12th, 1931, and May 7th, 1935, paid to plaintiff, in all, the sum of $2,200. Although called upon to do so, defendant refused to pay the then balance of $1,800. Hence this suit. Defendant denied liability. His denial was bottomed on the grounds that his writing lacking consideration, did not constitute a valid or binding contract on his part and that it merely constituted a written offer. Upon the construction thus placed upon his writing, defendant offered parol testimony to the effect that at the time he signed and delivered same to plaintiff's vice-president and general manager, who solicited his subscription, it was delivered with an express oral condition. The condition asserted was that if the primary objective of plaintiff organization was achieved, namely, to arouse public opinion as to the seriousness of the condition of the wild fowl in this country, no further demands would be made upon defendant. Defendant therefore urged that since the condition upon which his subscription was given had been fulfilled in 1935, he was not liable for the balance sued for.

The trial judge adopted the construction placed on the writing by defendant. He held that "the subscription card

signed by defendant does not in itself constitute a contract but was a revocable offer." He also held that the parol evidence was properly admitted and since there was no acceptance of defendant's offer, "there was no binding contract and all payments made by him were voluntary." Accordingly, a rule for judgment was entered of "no cause of action" in favor of defendant and against plaintiff. It is the propriety of the judgment so entered that plaintiff challenges on this appeal. That challenge requires the consideration and determination of the following points:

1. Are the plaintiff's purposes charitable?

The English Statute of Charitable Uses (43 *Eliz. ch.* 4) and the decisions construing that legislation, have evolved definitions of "charitable purposes" which have not only been accepted by the courts of England but also by the courts of this state. *Thomsen's Executors* v. *Norris* (*Court of Errors and Appeals,* 1869), 20 *N. J. Eq.* 489; *Bianchi* v. *South Park Presbyterian Church,* 123 *N. J. L.* 325; 8 *Atl. Rep.* (*2d*) 567. The English courts, moreover, have recognized that trusts in perpetuity for the benefit of animals may be valid charitable trusts. *Re-Grove-Grady* (1929), 1 *Ch.* 557. American courts have, generally speaking, adopted the same view. 14 *C. J. S. Charities* 452, § 19; 5 *R. C. L.* 337; section 65, 11 *Restatement, Trusts,* 374. While there seems to be no direct adjudications in this state, with regard to trusts for the benefit of animals, we are satisfied that the decisions of the English courts and those of our sister states rest upon a firm foundation of logic and reasoning. We, therefore, hold that, when as here, the purposes of a non-profit corporation are to conserve game birds, to establish hatcheries, refuges and to teach vermin control, those purposes are charitable purposes.

We are satisfied that plaintiff's purposes are charitable.

2. Does defendant's writing legally rise no higher than that of an offer or is there sufficient consideration to make it a valid, binding and enforceable contractual obligation?

In England a charitable subscription has not, in itself, been considered as creating a binding obligation. *In re Hudson,* 54 *L. J., ch.* 811. The law in most of the courts of our states

is to the contrary. Charitable subscriptions have been supported by sufficient consideration on various grounds. See *Williston's Cases on Contracts* (1937), (*4th ed.*) 205, 206, *footnote;* 38 *A. L. R.* (*Annotation*) 868-914.

True, in the case of *New Jersey, &c., Dispensary* v. *Wright,* 95 *N. J. L.* 462; 113 *Atl. Rep.* 144, our Court of Errors and Appeals, opinion by Mr. Justice Parker, treated a subscription to a charitable enterprise as standing on the same footing as any other contract in requiring acceptance and legal consideration to support it. But it is equally true, as the court was careful to observe (at *p.* 464): "* * * in this class of cases where public and charitable interests are involved, the courts lean towards sustaining such contracts, sometimes on consideration which, in a purely business contract, might be regarded as questionable." And, although in the case of *The American University* v. *Conover,* 115 *N. J. L.* 468; 180 *Atl. Rep.* 830, the same court, opinion by Mr. Justice Donges, held that the subscription in that case was not binding because it violated the statute of wills, nevertheless it was again careful to observe that "* * * the weight of authority is to the effect that contracts of this character, based upon the mutual promises of several persons to contribute to the same fund, are not without consideration." *Cf. Allegheny College* v. *National Chatauqua County Bank,* 246 *N. Y.* 369; 60 *C. J.* 956, *note* 64. A careful study of the cited decisions and many others to like effect, together with opinions of text writers on the subject, impels the conclusion that public policy forms the basis upon which consideration is spelled out in order to impose liability on charitable subscriptions. Subscribers should not evade their deliberate promise of contribution. "* * * Lightly to withhold judicial sanction from such obligations would be to destroy millions of assets of the most beneficent institutions in our land, and to render such institutions helpless to carry out the purposes of their organization, * * *." 25 *R. C. L.* 1398, 1399.

It is conceded that in addition to defendant's subscription, plaintiff obtained subscriptions from others in very substantial amounts. Defendant and the other subscribers thus

manifested their intention to participate in a charitable undertaking which all, as one, without hope of pecuniary gain, set out to accomplish. Let us see what happened in the instant case? Defendant caused his obligation properly to come into plaintiff's hands, and plaintiff accepted it and acknowledged receipt thereof. Defendant then paid a substantial part of his obligation to plaintiff which thereupon proceeded, and has since continued, to carry out its objectives which are in fact defendant's objectives, the subscribers' objectives. Now it seems to us, apart from the fine technique as to acceptance and consideration, both of which we hold sufficiently appear here, that in principle the issue involved is necessarily of great concern to the public welfare. It is a question of public policy, public welfare. Such a sound policy indeed requires that one who, as defendant here, has voluntarily made a valid and binding subscription to a charity of his choice should not be permitted to evade it.

3. The case was not tried upon the theory of a promissory estoppel. *Beatty* v. *Western College,* 177 *Ill.* 280. Nor was it tried on the theory of a conditional gift. *Williston on Contracts* 249, § 116. It was tried on the theory that the subscription agreement constituted a legally binding obligation. Had defendant desired to condition that obligation he could easily have inserted his condition in his subscription. The admission of parol testimony violated the parol evidence rule. *Naumberg* v. *Young,* 44 *N. J. L.* 331, and the many cases following that decision.

We have examined all other points argued and hold them to be without merit.

Judgment is reversed.