In the Matter of the Estate of RIVINGTON D. LORD, Deceased.

Surrogate's Court, Kings County, February 27, 1941.

*Stewart & Shearer* [*Robert A. West* of counsel], for the United States Trust Company of New York, as executor, etc., petitioner.

*William A. Kirk*, for the Hillsdale College, claimant.

WINGATE, S. The question here presented relates to the enforcibility against the estate of the promisor of a subscription agreement signed by this decedent, which reads as follows:

" NEW LIBRARY FUND FOR HILLSDALE COLLEGE

" Appreciating the need for building and endowing a new library at Hillsdale College, and in consideration of the gifts of others to a fund for this purpose, I hereby subscribe to Hillsdale College the sum of *One thousand* Dollars *two memorial windows* — note payable in eight quarterly payments commencing                    1937
or payable at my convenience as follows:

" *$1000.00* Name *Rivington D. Lord*
        " Address *379 Washington Ave*
" Date *May 21 '37*          *Brooklyn, N. Y.*
" Please make checks payable to Hillsdale College, Hillsdale, Michigan."

The portions of the foregoing which are italicized were demonstrated to be in the handwriting of the deceased. The remainder is printed.

Evidence was offered and admitted, in part over the objection of the accountant, respecting the transactions surrounding and following the execution of this document. As thus adduced, the record demonstrates that the decedent had long been interested in the welfare of Hillsdale College; that he had been solicited by the chairman of the centennial committee, organized to raise funds for a new library building, to contribute to this object and consented to donate $1,000 for the purpose, on the agreement that two memorial windows should be placed in the building in honor of his parents. Assent was given to this stipulation, whereupon the decedent signed and delivered the quoted. document, which was thereupon forwarded to the college. The latter thereafter employed and paid architects to draw plans for the projected building; the work in connection with which is now in progress.

The memorandum filed on behalf of the executor indicates that it felt under obligation to require a judicial evaluation of the validity of the claim predicated upon the subscription agreement, wherefore the issue has been submitted to the court for adjudication. This attitude is not surprising in view of the implied criticism of the adoption of a contrary course deducible from the observations of the Court of Appeals in *Matter of Taylor* (251 N. Y. 257, .262).

Examination of the authorities discloses that questions of this type have been a prolific source of litigation for generations. Particularly in the early cases, the courts experienced no little difficulty with the element of consideration for an agreement to pay such a

subscription. Obviously, on basic principles of contracts, if no element of *quid pro quo* could be spelled out of the transaction, the promise to pay was void and unenforcible. (*Allegheny College* v. *National Chautauqua County Bank*, 246 N. Y. 369, 372.) Since, however, dictates of public advantage were almost invariably involved in transactions of this variety, defenses of want of consideration were customarily viewed with disfavor (*Barnes* v. *Perine*, 12 N. Y. 18, 24; *Allegheny College* v. *National Chautauqua County Bank*, *supra*, 374), with the result that the usual tendency of the courts was to attempt, on some more or less plausible theory, to sustain such agreements with at least a modicum of lip service to the usually applicable principles of contracts.

The first preliminary step toward adjudications that binding obligations might be spelled out of subscription agreements is found in the early determination that parol evidence is admissible both for the purpose of demonstrating the existence of a consideration for the promise embodied in the pledge, and to show the acts of the promisee which had been performed in reliance thereon. (*Barnes* v. *Perine*, *supra*, 25; *Presbyterian Church of Albany* v *Cooper*, 112 N. Y. 517, 522; *Keuka College* v. *Ray*, 167 id. 96, 101; *Dougherty* v. *Salt*, 227 id. 200, 202; *I. & I. Holding Corp.* v. *Gainsburg*, 276 id. 427, 432, 433; *Matter of Taylor*, 236 App. Div. 571, 573.) Typical of such decisions is that in *Keuka College* v. *Ray* (*supra*, 101) which states: " Where the question is one between the original parties to the instrument, * * * proof may be made of the consideration and of such facts, attending the making and delivery of the note, as are not inconsistent with the instrument."

With all elements of the critical transaction disclosed upon the record, recovery upon subscription agreements has become the rule rather than the exception. Analysis of these adjudications indicates the presence of three different *rationes decidendi* for the attainment of this result, the *first* being the spelling out of an ordinary bilateral contract; *second*, the completion of a contract which was initially unilateral; and *third*, the invocation of an approximation of the equitable doctrine of estoppel.

Approaching an analysis of the adjudications which have professed to predicate their results upon the law of contracts, the distinction between bilateral and unilateral contracts is important of recollection. A bilateral contract is, of course, a promise in consideration of a counter agreement. This matures into an enforcible obligation at the instant the so-called " meeting of the minds " of the parties occurs; in other words, at the time the mutual promises are exchanged. A unilateral contract, on the other hand, usually creates no obligation at its inception. It is

merely a promise to do something in the future provided the promisee performs some specified act either within a stipulated period, or, in the absence of any precise specification in this regard, within a reasonable time. No enforcible obligation will be imposed upon the promisor unless the specified act is thus performed, but if performed, the contract matures, and the original promise is capable of enforcement.

In the decisions which have based their results on the law of contracts, whether of the bilateral or unilateral variety, it has been the general tendency to imply a return promise as a counter consideration in the former (*Keuka College* v. *Ray*, *supra*, 99, 100; *Barnes* v. *Perine*, *supra*, 24) and to imply a request for the performance of an act in the latter (*Trustees of Hamilton College* v. *Stewart*, 1 N. Y. 581, 583; *Barnes* v. *Perine*, *supra*, 29; *Presbyterian Church of Albany* v. *Cooper*, *supra*, 523; *Keuka College* v. *Ray*, *supra*, 100), even though no express counter promise or request for the performance of an act was demonstrated, provided an intention to that effect was reasonably capable of deduction from the demonstrated acts of the parties.

This principle of implication of a return promise or request is voiced with especial clarity in *Keuka College* v. *Ray* (*supra*, 99, 100) as follows: " the discussion is reduced simply to this, whether the agreement which is sought to be enforced, and which is a voluntary promise on the part of the defendant, expressly, or impliedly, either imposes upon the promisee some obligation, which is assumed, or requests of the promisee the performance of services, which are to be performed upon the strength of the promise. If those conditions are met, then, within the rule of law, there is a consideration which will suffice to uphold the agreement, or the promise. * * * if money is promised to be paid upon the condition that the promisee will do some act, or perform certain services, then the latter, upon performance of the condition, may compel payment. Nor need a request to the promisee to perform the services be expressed in the instrument; it may be implied."

Typical of the decisions predicated on the theory of the consummation of a bilateral contract is that of *Allegheny College* v. *National Chautauqua County Bank* (*supra*). There the subscriber promised to pay the sum of $5,000, stipulating on the reverse of the subscription blank that the " gift " should " be known as the Mary Yates Johnston Memorial Fund." In upholding the enforcibility of the written agreement to pay, despite its subsequent repudiation, the court said (p. 377): " We think the duty assumed by the plaintiff to perpetuate the name of the founder of the memorial is sufficient in itself to give validity to the subscrip-

tion within the rules that define consideration for a promise of that order. When the promisee subjected itself to such a duty at the implied request of the promisor, the result was the creation of a bilateral agreement \* \* \*. There was a promise on the one side and on the other a return promise, made, it is true, by implication, but expressing an obligation that had been exacted as a condition of the payment. A bilateral agreement may exist though one of the mutual promises be a promise ' implied in fact,' an inference from conduct as opposed to an inference from words."

In *I. & I. Holding Corp.* v. *Gainsburg (supra)*, on the other hand, the result was predicated on the consummation of a unilateral contract. The subscription agreement there adjudicated provided that " to aid and assist " the charity " in its humanitarian work " the subscriber agreed to pay certain specified sums. It was admitted that upon the faith of this subscription, the charity " proceeded in its humanitarian work, \* \* \* expended large sums of money and incurred large liabilities \* \* \*." In upholding the enforcibility of the agreement upon such a demonstration, the court said (at p. 433): " Our courts have definitely ruled that such subscriptions are enforceable on the ground that they constitute an offer of a unilateral contract which, when accepted by the charity by incurring liability in reliance thereon, becomes a binding obligation."

The third basis for upholding the enforcibility of subscription agreements, namely, by the application of the equitable principle of estoppel, although still according a certain lip-service to the principles of contracts, appears first to have been intimated in 1828 by Chief Justice PARKER of Massachusetts in *Amherst Academy* v. *Cowls* (23 Mass. [6 Pick.] 427, 433, 434). He wrote: " \* \* \* if by means of his contribution, or his solemn promise to pay, the body to whom he has pledged his word should encounter expense, become under legal obligations, or otherwise pursue the intent and purpose of the Legislature in granting them the charter, this is a sufficient legal consideration to support such a promise. In this respect the principles of common honesty cannot be at variance with the law of the land. *It cannot be maintained that objects so important shall be frustrated, and that the agents appointed by the government to execute them shall be embarrassed and injured by the right of individuals to withdraw their contributions or refuse to comply with their promises, after the execution or during the progress of the work which they themselves set in motion.*" (Italics not in original.)

This italicized language is strongly reminiscent of the frequently reiterated statement that " An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury. When this occurs it

would be inequitable to permit the first to enforce what would have been his rights under other circumstances." (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 292; *Trimble* v. *New York Life Ins. Co.*, 234 App. Div. 427, 432; *Rifkin* v. *Stuyvesant Ins. Co. of New York*, 240 id. 540, 542.)

This statement of Chief Justice PARKER was resurrected by the Court of Appeals of this State in 1854 and made the basis of its decision in *Barnes* v. *Perine* (*supra*). Concerning this adjudication the same court later observed (*Allegheny College* v. *National Chautauqua County Bank, supra*, 374): "Thus in *Barnes* v. *Perine* (*supra*) the subscription was made without request, express or implied, that the church do any thing on the faith of it. Later, the church did incur expense to the knowledge of the promisor, and in the reasonable belief that the promise would be kept. We held the promise binding, though consideration there was none except upon the theory of a promissory estoppel."

The substantial nature of promissory estoppel as a basis of decision in the enforcement of subscription agreements has, on several subsequent occasions, been reaffirmed by the Court of Appeals (see *e. g., Matter of Taylor, supra*, 263; *I. & I. Holding Corp.* v. *Gainsburg, supra*, 434), although it is intimated in the latter case (p. 434) that it is to be employed only on those occasions when the policy of the court for the enforcement of subscription agreements is incapable of effectuation by a determination of the making of a contract, either bilateral or unilateral. The court observes in this regard: "That doctrine need not be applied to save a subscription where a request or invitation that the promisee go on with its work can be implied from the subscription agreement. It is only when a request or an invitation to carry on cannot be implied in fact that it is necessary to invoke that doctrine."

In view of the nature of the modern doctrine of promissory estoppel as an application of the equitable principle that repudiation will not be permitted where action has been taken and expense incurred by the promisee in reliance thereon, the limitation, the existence of which is intimated in *Twenty-third Street Baptist Church* v. *Cornell* (117 N. Y. 601, 605) that such action must have occurred with the knowledge of the subscriber, seems wholly illogical and of doubtful present applicability. If the crux of the issue of whether or not the agreement is to be enforced is the promise or representation of the promisor and the justified action of, and detriment to, the promisee in reliance thereon, the fact that the former was actually aware of the action and detriment appears wholly immaterial since he must be deemed to have contemplated that it would follow as a natural sequence from his promise.

In view of the noted policy of the courts to sustain the validity of subscription agreements whenever a counter promise of the donee can be deduced from the actions of the parties or it can be demonstrated that any legal detriment has been sustained by the promisee in reliance upon the promised gift, the determinations that subscriptions by others do not constitute an adequate consideration for a given subscription (*Presbyterian Church of Albany* v. *Cooper, supra,* 521, 522; *Twenty-third Street Baptist Church* v. *Cornell, supra,* 604; *I. & I. Holding Corp.* v. *Gainsburg, supra,* 432) lose significance, and are of interest only as a ground for surprise as to why the courts, in the pursuit of their obvious purpose of validating such agreements, did not adopt this as an additional means to that end by an application of some approximation of the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268).

The subscription agreement in the case at bar is clearly enforcible on any one of the three bases of decision hereinbefore noted. A bilateral contract was clearly demonstrated with the mutual promises, that of the decedent to pay the specified sum and of the college to erect the two memorial windows. The consummation of a unilateral contract may also be deduced from the implied request of the testator to the college to proceed with the erection of the library building and its actions to this end. The argument on behalf of the accountant that the only implication of request by the testator was for the erection of the windows, is excessively legalistic. The windows were as much a part of the building as, for example, its west wall, wherefore any action such as the employment and payment of architects for the planning of the building in its entirety was in furtherance of the implied request of the promisor for the erection of a part thereof. Finally, even if, perchance, any person might prefer so to do, there is here demonstrated the incurring of legal detriment by the college in reliance upon the promise of the decedent which would render it inequitable to permit its repudiation and would thus establish the necessary elements of a promissory estoppel.

For the reasons stated the objection of Hillsdale College will be sustained.

Enter decree on notice in conformity herewith.