276 So.2d 102 (1973)
Gladys B. JORDAN et al., Appellants,
v.
MOUNT SINAI HOSPITAL OF GREATER MIAMI, INC., a Florida Corporation Not for Profit, Appellee.
No. 72-820.
District Court of Appeal of Florida, Third District.
April 3, 1973.
*103 McCune, Hiaasen, Crum, Ferris & Gardner and Davis W. Duke, Jr., Fort Lauderdale, for appellants.
Horton, Schwartz & Perse, Lloyd L. Ruskin, Miami Beach, for appellee.
Before PEARSON and CHARLES CARROLL, JJ., and CREWS, JOHN J., Associate Judge.
CREWS, JOHN J., Associate Judge.
This appeal arose from an action upon subscriptions to a charity. The trial judge found that there was adequate consideration to support the execution of the pledge agreements by Harry M. Burt, deceased. Thereupon final judgment was entered in favor of appellee and against appellants in the sum of $80,000.00.
Harry M. Burt, died November 18, 1969. Within season the appellee filed in the probate court its claim against his estate alleging a balance of $40,000.00 due on each of two pledges. The appellants filed timely objection and the action below ensued. The trial court ruled in favor of the charity and appeal followed. We reverse.
The relevant facts adduced at trial may be thus stated:
On February 23, 1968 and May 15, 1968 the decedent, Harry M. Burt, signed and delivered to appellee two pledges of $50,000.00 each. Contemporaneous with and subsequent thereto, payments totalling $20,000.00 were made which were applied equally to each pledge. At the time of the subscriber's death, $80,000.00 remained to be paid.
The subscription agreements were in part in the following form:

MOUNT SINAI HOSPITAL DEVELOPMENT FUND

Of Mount Sinai Hospital

Of Greater Miami, Inc.
In consideration of and to induce the subscriptions of others, I (we) promise to pay to Mount Sinai Hospital of Greater Miami, Inc., or order the sum of Fifty Thousand and no/100 dollars $5,000.00 payable herewith: Balance in nine equal annual installments commencing on _________
 Signature __________
 Date _______________
There is no claim that the appellee suffered any material detriment, or incurred any substantial liability in reliance upon the subscriptions.
The primary question is whether the consideration stated in the subscription is legally sufficient to make binding the promise of the subscriber so as to be enforceable by the promisee. The briefs of able counsel failed to cite a Florida case in point, and our independent research has not disclosed one. It is not a question, however, that has not been answered by other authorities.
A few jurisdictions have found and approved as consideration the mutual promise of subscribers. But as stated in 83 C.J.S. Subscriptions § 5, subparagraph (3), there is definitely a conflict of authority on this *104 point. The doctrine of "a promise for a promise" is bottomed upon the view that "if it is within the contemplation of a contributor that the fact of his contribution may be announced to others as an independent inducement to contributions by them, and if additional contributions are made by reason of such inducement, even in part, it operates as a sufficient consideration for the promise of the first contributor." 50 Am.Jur. Subscriptions, § 14, p. 788. Those jurisdictions which adhere to this proposition are approximately eleven in number (Arkansas, California, Georgia, Iowa, Kansas, Maryland, Michigan, Missouri, North Carolina, Ohio, and Pennsylvania).
In Congregation B'Nai Sholom v. Martin, 382 Mich. 659, 173 N.W.2d 504 (1969), the Supreme Court of that state held that mutual promises between subscribers of pledges for a lawful purpose will constitute consideration as to allow enforcement of the donation. The plaintiff, B'Nai Sholom, secured 102 pledges for the construction of a new synagogue, one of which was a $25,000.00 donation from the defendant Martin. The statement on the pledge card was as follows:
"... I want a new B'Nai Sholom synagogue and I am willing to do my share. In consideration of the gifts of others, I/WE welcome the privilege of subscribing $ ____... ."
The court cited More Game Birds in America, Inc. v. Boettger, 125 N.J.L. 97, 14 A.2d 778, 780 (1940), which stated:
"... Defendant and the other subscribers thus manifested their intention to participate in a charitable undertaking, as one, without hope of pecuniary gain... . The issue involved here was one of great concern to the public welfare... . Sound policy requires that one who has voluntarily made a valid and binding subscription should not be permitted to evade it... ."
The court in B'Nai Sholom adhered to the principle in Boettger and enforced the subscription even though the congregation had not entered into any agreements for the construction of the sanctuary when Martin asked to withdraw his pledge.
Applying Maryland law, the Fourth Circuit Court of Appeals held that subscriptions made in consideration of subscription by others create binding and enforceable obligations. Helvering v. Safe Deposit and Trust Co. of Baltimore, 95 F.2d 806, 812, (4th Cir.1938). In this case, a promise to pay 20 weekly installments of $1,500.00 to the Emergency Employment Relief Committee of New York was given in consideration of similar subscriptions so that the Committee could provide temporary and constructive work for the unemployed in New York. See, Sterling v. Cushwa, 170 Md. 226, 183 A. 593 (1936).
A defendant's claim that a lack of consideration existed in mutual promises was dismissed as a mere play on words in the Kansas case of Cotner College v. Hyland, 133 Kan. 322, 299 P. 607 (1931). Hyland claimed that there was not a scintilla of evidence that the makers of the instrument executed it in consideration of the fact that some other person executed a similar document, either before or after the signing of his pledge. The court's position was that there existed no limitation on the right of the beneficiary of the subscription agreement to sue the subscribers, and that the consideration for the promise was to be found in the promise of the others (". . In consideration of our interest in Christian education and the promises of like tenor and effect made by other subscribers to Cotner... .") The court continued that "the doctrine may be sound or unsound, but it is a wholesome one in practice, and the court will not now depart from it."
Other examples where mutual promises of subscribers have been upheld as sufficient consideration are:
(1) Brokaw v. McElroy, 162 Iowa 288, 143 N.W. 1087 (it was in the contemplation of a contributor that the *105 fact of his contribution may be announced to others as an inducement to get additional contributions), and
(2) Irwin v. Lombard University [56 Ohio St. 9], 46 N.E. 63 (Ohio) (where it appeared that a number of subscribers contributed money on the faith of a common engagement which normally could not be accomplished without common, concerted action). See also, Commissioner of Internal Revenue v. Bryn Mawr Trust Co., 87 F.2d 607 (3d Cir.1936).
The connecting thread in most of these cases is that the agreement which was sought to be enforced (a voluntary promise on the part of the payor), either imposed upon the promisee some obligation which it assumed, or the requested performance of some service on the strength of the promise. When those conditions were met, there was sufficient legal consideration to uphold enforcement of the promise; for if money is promised to be paid upon the condition that the promisee will do some act or perform certain services, then the latter may, upon performance, compel payment.
While the rule is frequently stated without exception, a factual exception or additional circumstance seems to be apparent in the majority of those cases; that circumstance being one of actual reliance upon the subscription by the charitable institution.
In Furman University v. Waller, 124 S.C. 168, 117 S.E. 356 (1923), the charitable subscription contained a designation as to a specific charitable project. A dormitory and other buildings were erected, and the land purchased. The faculty and students were doubled in number. All this was done on the strength of subscriptions secured in the campaign. In University of Southern Calif. v. Bryson, 103 Cal. App. 39, 283 P. 949 (3 D.C.A.Cal. 1929) there was a specific designation of beneficiary and also the mentioning of a specific composite sum sought to be raised by the campaign. Relying upon the payment of these notes, the administrative building was commenced, obligations incurred, and college courses enlarged. In addition, the note of each subscriber was conditioned upon the fulfillment of the pledges of the others to raise a certain specified amount of money. In Byington v. Little Rock Chamber of Commerce, 132 Ark. 361, 201 S.W. 122 (1918), the mutual undertaking expressed in the numerous subscriptions, when acted upon, constituted a binding consideration. That case involved an action for specific performance upon the tender of performance by the charitable institution. In Kennedy v. Brooke, 176 Ga. 363, 168 S.E. 294 (1933), there was apparently but one instrument of contract in which there was a statement that "The undersigned persons, desiring to assist in the promotion and development of the Invisible Kingdom, do hereby subscribe to the amounts set opposite their name * * *." Again in the case of Calvary Presbyterian Church v. Brydon, 4 Cal. App.2d 676, 41 P.2d 377 (2 D.C.A.Cal. 1935), after the defendant had signed the personal note, certain purchases were made in reliance upon his promise to pay. In Sterling v. Victor Cushwa & Son, 170 Md. 226, 183 A. 593 (1936), a specific sum was designated for a guaranty fund. In the absence of an accumulation of that fund the agreement was not to be binding. Once again, there was reliance upon the subscription.
A goodly number of jurisdictions and certain learned text writers, notably Williston and Corbin, are of the opinion that mutual promises to subscribe lack sufficient consideration to allow enforcement of charitable pledges. See Williston on Contracts, Third Edition on Sect. 116, Corbin on Contracts, Vol. 1A., Section 198.
In Cottage Street Methodist Episcopal Church v. Kendall, 121 Mass. 528 (1877), the court held that it was inconsistent with elementary principles to enforce subscriptions grounded in mutual promises to give, even though the plaintiff acted and built the church before the death of the benefactor. *106 The pledge of $500.00 to the building fund was held to impose no charge upon the church, and hence, not to constitute consideration for the donation. The judge in Kendall was of the opinion that the performance of a gratuitous promise, like the one in the instant case, depends wholly upon the goodwill which prompted it, and will not be enforced by the law.
The Court of Appeals in New York similarly held in Presbyterian Church v. Cooper, 112 N.Y. 517, 20 N.E. 352 (1889), that mutual promises of subscribers are insufficient consideration as between the corporation-promisee and the promisor. Here, the defendant was one of several subscribers who agreed to furnish the church with a sum of money to help in the making of mortgage payments. The subscription recited the consideration as "... $1 ..., and the agreement of the others in the contract... ." The court held that no action for breach of contract would exist between the promisor and promisee, but if one were to arise, it would be against the promisor by the other subscribers.
In, I. & I. Holding Corp. v. Gainsburg, 276 N.Y. 427, 12 N.E.2d 532 (1938) the court said:
"it is unquestioned that the request that other subscribers make contributions in reliance on appellant's contribution, stated as a consideration in the subscription agreement, is not consideration which will support appellant's promise."
More recently New York has declared that subscriptions which are conditioned upon subscriptions for a like purpose aggregating a certain amount by a certain date, are deemed to lack the legal consideration to make then enforceable. In re Field's Will, 15 Misc.2d 950, 181 N.Y.S.2d 922 (1959).
Mutual promises of other subscribers were held not to constitute consideration for charitable donations in Delaware. In American University v. Todd, 9 W.W. Harr. 449, 1 A.2d 595 (Del. 1938). The late Mrs. Gambill donated $5,000.00 to American "... in consideration of one dollar in hand ... in consideration of my interest in Christian Education, and for and in consideration of the mutual promises of other subscribers... ." In vacating the judgment for the University, the court relied heavily on Williston's approach to mutual promises of others as consideration:
"It is doubtless possible for two or more persons to make mutual promises that each will give a specified amount to a charity or other object, but in the case of ordinary charitable subscription, the promise of each subscriber is made directly to the charity, or its trustees, and it is frequently made without any reference to the subscription of others. If induced at all by previous or expected subscriptions, this inducement only affects the motive of the subscriber; it cannot be said that the previous subscriptions were given in exchange for the later one. Indeed the earlier subscriptions would be open to the objection of being past consideration so far as a later subscription was concerned." 1 Willist. on Contracts (Rev.Ed.) Sect. 116, p. 406.
Other jurisdictions in which mere mutual promises of subscribers, without incurrence of expenses or liabilities in reliance upon such promises, can be inferred not to constitute sufficient consideration as to be enforceable are:
(1) Cutwright v. Preachers' Aid Society, 271 Ill. App. 168 (3d D.C.A.Ill. 1933),
(2) Furman University v. Waller, 124 S.C. 68, 117 S.E. 356 (1923).
Additionally, it has been held that labor and expenses in obtaining other subscribers do not constitute a consideration to support a promise of charitable contribution, (Beatty v. Western College, 177 Ill. 280, 52 N.E. 432), and subscriptions which are conditioned upon all subscriptions for a like purpose aggregating a certain amount of money by a certain date are deemed to lack legal consideration to make them enforceable, *107 (In Re Field's Estate, 15 Misc.2d 950, 181 N.Y.S.2d 922 (N.Y.Surrogate Ct. 1959)).
A majority of courts which have enforced charitable subscriptions do so on the theory of a unilateral-bilateral contract, or by applying the doctrine of promissory estoppel. Jurisdictions adhering to this view are: Alabama, Arkansas, California, Georgia, Illinois, Iowa, Maine, Massachusetts, Minnesota, Missouri, New Hampshire, New York, Ohio, Oregon, South Carolina, South Dakota, Texas, Vermont, Virginia, Washington, and Wisconsin.
In such states neither a request in a unilateral contract nor a return promise in a bilateral contract need be expressed, because implication will suffice. Keuka College v. Ray, 167 N.Y. 96, 60 N.E. 325 (1901; In Re Lord's Estate, 175 Misc. 921, 25 N.Y.S.2d 747 (Surrogate Ct. 1941).
In discussing charitable subscriptions In Re Estate of Lipsky, 45 Misc.2d 320, 256 N.Y.S.2d 429 (1965), the surrogate quotes Judge Cardozo as saying: "Very likely, conceptions of public policy have shaped, more or less subconsciously, the rulings thus made. Judges have been affected by the thought that `defenses of that character' are `breaches of faith towards the public, and especially towards those engaged in the same enterprise, and an unwarrantable disappointment of the reasonable expectations of those interested.' * * *" The law is established in New York that charitable subscriptions are enforceable on the ground that they constitute an offer of a unilateral contract which, when accepted by the charity by incurring liability in reliance thereon, become a binding obligation. Cohoes Memorial Hospital v. Mossey, 25 A.D.2d 476, 266 N.Y.S.2d 501 (1966).
For the doctrine of promissory estoppel to be applicable, the promisor must make a promise which he should reasonably expect to induce action or forbearance of a substantial character on the part of the promisee, and where injustice could only be avoided by the enforcement of the promise. Southeastern Sales and Service Co. v. Watson, 172 So.2d 239 (2d D.C.A. Fla. 1965); Re Drain, 311 Ill. App. 481, 36 N.E.2d 608 (1941): Floyd v. Christian Church Widows and Orphans Home of Kentucky, 296 Ky. 196, 176 S.W.2d 125 (1943). Perry Publications, Inc. v. Bankers Life and Casualty Co., 246 So.2d 605 (4th D.C.A.Fla. 1971). In Floyd, supra, it was held that the charity must perform acts or incur expenses in reliance upon the strength of the pledge. See, University of Southern California v. Bryson, 103 Cal. App. 39, 283 P. 949 (3d D.C.A.Cal. 1929).
It is the general rule that a promise not supported by a consideration is nudum pactum and unenforceable. This rule, in its most liberal sense, is applicable to charitable subscriptions. Where there is no consideration for the promise, the strength of the promise rests solely on the will of the person making it.
It is also a respected proposition of law that an estate will be liable on the charitable subscription of a decedent. The death of a subscriber will only work a revocation of the subscription where the decedent himself might have revoked the promise at the time of death or any period prior thereto. A survey of the many jurisdictions indicates that as a matter of public policy courts will sustain subscriptions for a public object or purpose if any consideration can be found, and the courts have been willing and anxious to discover such a consideration to uphold them. See 83 C.J.S. Subscription § 5, p. 735. While Florida has not spoken on the question of consideration with respect to charitable subscriptions, it is recited in 30 Fla.Jur. Subscriptions, p. 314, that "the rule most generally advanced is that consideration is supplied where, on the faith of the subscription, monies have been expended, liabilities incurred, or work performed."
*108 With the foregoing background, we now consider the facts, and the applicable law to the case at bar.
The pledges state only that they are made
"in consideration of and to induce the subscriptions of others."
We view this statement as a mere gratuitous promise of a future gift lacking consideration and hence, unenforceable as a nudum pactum. We would still adhere to this proposition even if there had been evidence, which there was not, that the decedent's pledges were used to induce others to subscribe.
We are not unmindful that two or more persons may contract in an undertaking on behalf of a charitable institution so as to bind themselves to the beneficiary, but such an issue must await a determination upon facts not present in the case sub judice.
The pledge cards made no specific reference as to the purpose of the gift except to indicate that it was to the "Development Fund." Appellee did not claim or assert below that the subscriber gave to some specific project or cause which was thereafter instituted in total or partial reliance on the promise of future contributions. Hence, there is no predicate upon which this court could adopt the unilateral-bilateral doctrine, to enforce a charitable pledge, even if it were so inclined.
Neither can the appellee find solace in the doctrine of promissory estoppel. The record is devoid of any evidence that the promisee was induced in reliance upon decedent's promise to take any substantial action, or to forego any material right, so that an injustice could only be avoided by applying this equitable doctrine. Southwestern Sales and Service Co. v. T.T. Watson, Inc., 172 So.2d 239, 241 (2 D.C.A.Fla. 1965); Restatement of Contracts, Sec. 90.
Courts should act with restraint in respect to the public policy arguments endeavoring to sustain a mere charitable subscription. To ascribe consideration where there is none, or to adopt any other theory which affords charities a different legal rationale than other entities, is to approve fiction.
The wisdom of such a policy, its possible detriment as well as its benefit to public bodies, may be the subject of legislative inquiry and decision.
In the interim, educational, religious, fraternal or other charitable institutions will have to depend upon the goodwill reposing in the heart of an educated, religious, fraternal or charitably disposed donor for payment of a gratuitous promise.
By reason of our decision herein, appellant's other points in argument will not be discussed.
For the reasons stated the judgment is reversed, and the cause is remanded to the circuit court with direction to enter an order dismissing the complaint.
Because we regard this decision to be one that passes on a question of great public interest, we shall so certify the decision to the Supreme Court of Florida, as provided for in Article V, Section 4(2) of the Constitution.
Reversed and remanded with direction.