### RICARDEL, et al v. FLORIDA PLANNED COMMUNITIES, Inc., et al.
#### No. 75-571-CC--11.
County Court, Palm Beach County.

September 21, 1976.

Bruce Daniels of Lesser, Lesser & Daniels, West Palm Beach, for the plaintiffs.

Wallace B. McCall, of Johnson, Ackerman & Bakst, West Palm Beach, for the defendants.

DANIEL T. K. HURLEY, Judge.

*Final judgment:* This casue came on for trial before the court and from the testimony and evidence presented therein, the court makes the following —

### FINDINGS OF FACT

1. Plaintiff heads an orchestra and also serves as a booking agent for other bands and orchestras.

2. Defendants are the developers of, and at the time in question were the managers of, a condominium complex known as Golden Lakes Village.

3. During the time in question, defendants employed one Velma Troy as the activities director for Golden Lakes Village. One of Ms. Troy's employment responsibilities was to negotiate for and secure musical entertainment for special occasions at the condominium. Prior to the events giving rise to this litigation, Ms. Troy, representing the defendants, had retained the plaintiff's orchestra on one other occasion.

4. On December 19, 1974, plaintiff and his orchestra were playing at the Golden Lakes Village clubhouse. He was approached by Ms. Troy and was asked if he and his orchestra were available to play at a New Year's Eve party. Ms. Troy explained that although she had already engaged another band, she felt certain that she could cancel that contract. Plaintiff replied that his orchestra was already engaged but that if she desired, he could book another band. He further explained that because New Year's Eve was a date in great demand, the contract would have to be non-cancellable and would require a deposit of $300. He further stated that the total price would be $1,000. Ms. Troy agreed to these conditions and the plaintiff indicated that he would prepare a written contract embodying the terms of their agreement and forward it to her.

5. At trial there was a conflict in the testimony as to whether the defendants' ability to cancel the first band was an express condition precedent to the formation of a contract with the plaintiff. While it may well have been the defendants' intention not to sign the written contract until they had successfully cancelled the first, I find that this was not made known to the plaintiff and was therefore not a condition precedent.

6. On December 20, 1974, Mr. Russell, a member of the plaintiff's orchestra and a party to this suit, forwarded the contract to Ms. Troy. This contract was never executed by the defendants.

7. Also on December 20, 1974, defendants forwarded a check drawn on the account of Gluckstern-Taylor Enterprises and in the amount of $300 to the plaintiff. Sometime thereafter, defendants stopped payment on this check.

8. The aforementioned check was received by the plaintiff on December 23rd. Plaintiff thereupon contracted with Emmanuel Rogers to provide an orchestra for the New Year's Eve party at Golden Lakes Village. The contract price between the plaintiff and Rogers was $700 and the testimony at trial indicated that the plaintiff had satisfied this obligation by payment in full.

9. On December 26th, Ms. Troy called the plaintiff and indicated that "she was in trouble." She said that she was unable to cancel the first band and therefore wanted to cancel the Rogers band. Plaintiff responded that this was impossible, that he had already entered into a contract with Rogers and that it was non-cancellable.

10. The Rogers band appeared at Golden Lakes Village on New Year's Eve but was refused admittance.

Based upon the foregoing findings of fact, the court reaches the following —

### CONCLUSIONS OF LAW

The determinative question is whether, under the facts of this case, the defendants were entitled to revoke their promise to enter into a contract with the plaintiff to retain the Rogers orchestra. I conclude that they were not and that they are obligated to the plaintiff.

The general rule is that where the parties intend a written contract to be the consummation of their negotiations, there is no contract until the written document is approved and signed by both parties. *Mann v. Thompson,* 100 So. 2d 634 (Fla. 1st DCA 1958); 17 Am. Jur. 2d, *Contracts,* §28; 7 Fla. Jur., *Contracts,* §33. There are, however, exceptions to this rule and the case at bar is one in point. Here the facts indicate an agreement between the parties which was supported by the consideration of promissory estoppel.

"The doctrine of promissory estoppel broadly stated is that a promise, which the promisor should reasonably expect to induce action or forebearance of a substantial character on the part of the promisee and which does produce such action or forebearance is binding if an injustice can be avoided only by enforcement of the promise. It has been variously stated that the doctrine supplies the missing element of consideration to make the offer a contract or that it makes the offer irrevocable." *Southeastern Sales and Service Co. v. T. T. Watson, Inc.* 172 So. 2d 239 (Fla. 2d DCA 1965).

In the case at hand, the defendants, through Ms. Troy, were informed that the contract with the Rogers orchestra would be non-cancellable and would require a deposit. Ms. Troy's oral agreement to these terms coupled with the act of forwarding the deposit check in the requisite amount evidenced a promise by the defendants which was reasonably calculated to induce action of a substantial nature by the plaintiff. This interpretation is reinforced by the time sequence in question. Common sense, and indeed in this case, actual notice informed the defendants that time was of the essence. New Year's Eve, a premium engagement date for orchestras, was only days away. The defendants should have foreseen and expected that their action would in turn cause the plaintiff to take immediate action upon receipt of their check. The plaintiff's response in obligating himself to the Rogers orchestra was reasonable, foreseeable, and under the facts of this case, necessary. It is the court's conclusion that an injustice can be avoided only by enforcing the defendants' promise and thereby requiring the defendants to reimburse the plaintiff for the monies which he expended on their behalf and at their behest.

In reaching this conclusion, the court has considered and relied upon *Elgin National Industries, Inc. v. Howard Industries, Inc.,* 264 So. 2d 440 (Fla. 3d DCA 1972) which contains a factual background compellingly similar to the case at hand. There as here, the parties had not reduced their agreement to writing. However, the fact that an option to purchase was said to be "firm" (compared with our provision that the Rogers orchestra contract was known to be "non-cancellable"), and the fact that the seller in *Elgin* was aware that the purchaser would expend monies (as defendants here were aware that plaintiff would obligate himself to Rogers), justified the application of the doctrine of promissory estoppel. See also *In re Estate of Ingram,* 302 So. 2d 204 (Fla. 2d DCA 1974); *Jordan v. Mt. Sinai Hospital of Gr. Miami, Inc.,* 276 So. 2d 102, 107 (Fla. 3d DCA 1973), aff'd. 290 So. 2d 484, 486 (Fla. 1974); Restatement of Contracts, §90; 28 Am. Jur. 2d, *Promissory Estoppel,* §§48, et seq.

Accordingly, it is ordered and adjudged that the plaintiffs, Joseph Ricardel, William S. Russell and Raymond Garbarino, a/k/a Ray Bari, d/b/a Joseph Ricardel Orchestras, shall take and recover judgment from the defendants, Florida Planned Communities, Inc., d/b/a Golden Lakes Village and Jack Taylor and Alan Gluckstern d/b/a Gluckstern Taylor Enterprises, in the sum of $700 together with the costs of this action which shall be determined at a later hearing, for which let execution issue.